## CHAMBERLAIN v. NORTHEASTERN 'R. R. COMPANY.[1]

1. CORPORATIONS—CONVEYANCES.—A railroad company having agreed to purchase from one T. a tract of land for $10,000, found the title to be in dispute, and then instituted a proceeding for the condemnation of this land for its purposes.   Commissioners were appointed, and return made, assessing the land at $10,000, which was its full value.   The company then filed its bill in the Court of Equity, alleging that as the title was in dispute, it could not · determine to whom the money should be paid, and asking leave to pay the money into court, and let the parties defendant interplead and have their rights determined.   All the defendants agreed to this, the money was paid into court, and finally paid over to T. under

---

[1] With this case in 25 L. R. A., 139, is a note on the validity of a sale of real estate by a railroad corporation.

the decree of the court. Afterwards this railroad company, reciting that it had no further use for this land for its corporate purposes, conveyed to another, and plaintiff, claiming under this title, brought action for recovery against one alleged to have taken wrongful possession of a portion of it. The trial judge granted a non-suit on the ground that a railroad company could not convey in fee for other purposes lands acquired by it for its corporate purposes, and that its deed thereto was void. *Held*, that this ruling was error, and the order for non-suit was vacated.

2. APPEAL—PETITION FOR REHEARING refused, this court stating that it had considered only the ground upon which the non-suit had been granted by the Circuit Judge, and not other grounds urged in support of the non-suit, but not passed upon in the court below.

Before FRASER, J., Charleston, December, 1892.

Action by D. H. Chamberlain, as receiver of the New York and Charleston Warehouse and Steam Navigation Company, and the company itself, against the Northeastern Railroad Company. The South Carolina Railroad Company, under whom plaintiff claimed, agreed with A. V. Toomer to purchase a body of marsh land, but finding that others also claimed title to the land, it instituted condemnation proceedings in the Court of Common Pleas after notice to the several claimants. Commissioners were appointed, who appraised the land at $10,000, and made return of their action. The railroad company then filed its bill in the Court of Equity against these several claimants, to require them to interplead as to this purchase money, which was paid into court. The defendants answered, acquiescing in what had been done. After litigation between them, it was finally adjudged that Toomer had the title, and the money in court was paid over to him under the decree in the cause. The plaintiff traced title back to the South Carolina Railroad Company.

*Messrs. Smythe & Lee* and *Mitchell & Smith*, for appellant.

*Messrs. Fitzsimons & Moffett*, contra.

June 9, 1894.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   This is an action for the recovery of possession of one and one-quarter acres of real estate, being

part of a strip of marsh land upon the bank of a navigable stream, with its eastern boundary on Cooper River, called at that point "Town Creek," and constituting part of the wharf front of the city of Charleston.

The complaint, among other things, stated "that on and before April 8th, 1891, the New York and Charleston Warehouse and Steam Navigation Company was lawfully seized as owner in fee simple of all that parcel of marsh land, situate within the corporate limits of the city of Charleston, on the west side of Cooper River or Town Creek, containing forty-three acres, more or less, bounded, &c., said piece or parcel of land being commonly known as the 'Cleland grant;' and that the said D. H. Chamberlain was in possession of the said parcel of land, holding the same for and on account of, and as the property of, the said New York and Charleston Warehouse and Steam Navigation Company, as receiver, &c. That the plaintiffs, being so seized and possessed, the defendant, on the said April 8th, 1891, unlawfully entered upon part of the said premises, to wit: upon all that portion containing about one and one-qurrter acres, being of irregular shape, bounded, &c., and on the west and south by Vardell's Creek; and that it is still unlawfully in possession, withholding the possession from the plaintiffs, to their damage one hundred dollars." And they pray judgment for the possession, &c.

The defendant corporation answered, alleging "that it is in the possession of the tract of land therein described, and is lawfully seized and possessed of the same, as owner in fee simple thereof, and defendant denies that plaintiffs, or either of them, are now, or were at the commencement of this action, owners, or owner as alleged, of the said premises, or any part thereof, and denies that the plaintiffs, or either of them, are now, or were at the commencement of this action, entitled to the possession of the said premises, or any part thereof. On the contrary, the defendant avers that long before the commencement of this action this defendant became and was lawfully seized in fee of the said tract of land, with the appurtenances, and entitled unto or pos- sessed of the same, in its sole and absolute right; and from then at all times down to the commencement of this action has con-

26—41

tinued to be, and still continues to be, so seized in fee of every part and parcel thereof, and entitled unto and possessed of the same in its sole, absolute right," &c.    And for a further defence the defendant interposes the statute of limitations, &c.

The cause came on to be tried before his honor, Judge Fraser, and a jury.    To support the allegations of the complaint the plaintiff offered their testimony, which consisted largely of parts of records and copies of deeds of conveyance, and, of course, cannot be set out at length here.    But as we suppose that a condensed outline of the most important facts proved may serve, at least, to make intelligible the points to be made and decided, we make the following statement: *First.*  In 1785, a grant covering the forty-three acres of marsh in contention here was made to William Cleland, and is throughout the case called the "Cleland grant."    *Second.*  Cleland conveyed the said forty-three acres of marsh to other persons, and the title passed down regularly until it rested in one Dr. Anthony V. Toomer. *Third.*  Some time prior to 1856, it seems that the South Carolina Railroad Company desired to extend their road down to deep water, and believing that the aforesaid forty-three acres of marsh was necessary for that purpose, they entered into an agreement with Dr. Toomer to purchase the same for $10,000 in cash; that being the price asked for the whole of the marsh and the fee simple title thereto.    But certain other persons (who need not be named) claimed to have an interest in the marsh covered by the "Cleland grant," and the railroad company had to file a bill of interpleader, calling on those persons to come in and ascertain the rights of the different parties, and also to enable the company to effect their purpose of purchase. Litigation followed, but it was finally decided that Toomer was the owner of the land, and the court in that case "ordered that the master do deliver to the said A. V. Toomer his bond taken by the said master for the fund paid into court in this case," &c.    *Fourth.*  It was further shown, that afterwards large judgments and executions were issued from the United States Court against the South Carolina Railroad Company; and that under and by authority of these judgments and executions, Absalom Blythe, Esq., United States Marshal at the time,

levied and sold the said marsh lands covered by the "Cleland grant," as the property of the South Carolina Railroad Com-. pany, and on July 5th, 1882, conveyed the same to John H. Barnes and others named, who in turn conveyed the same to the South Carolina Railway Company. *Fifth.* On December 21st, 1885, the new South Carolina Railway Company conveyed the said marsh lands to the N. Y. & C. W. & S. N. Co., the plaintiffs, who brought this action.

At the conclusion of the plaintiff's testimony, the defendants moved for a non-suit, which was granted by the presiding judge, upon the following grounds: "I. I think that there is certainly evidence of an execution and levy on the land sued for, and under which the United States Marshal sold, to go to the jury; and it is not necessary for me to say whether I think it sufficient. II. Under the construction given by the Supreme Court to the act of 1874, in reference to the granting of lands on navigable streams, I am not able to hold that the grant under which plaintiffs claim title can in this case be held to be void under the testimony before us. III. The most serious question in this case, and it is one of great importance, is, whether the S. C. R. R. Company, under which the defendant (plaintiffs) claim, ever had any title for other than railroad purposes, and which it could convey, or which could be conveyed either by the receiver of the company acting as special master or by the marshal, under an execution against the company to another person, for any other than the railroad purposes of the S. C. R. R. Company. While I am inclined to hold that the company could take no higher title under a voluntary deed, even where a full price is paid, than it could take under proceedings for condemnation of the land for its purpose as easement only, I think that in this case the company and those who hold under it should be held to the proceedings in the court under which this land was obtained, construed as proceedings for condemnation. The Constitution did not permit the legislature, in the exercise of eminent domain, to take more land than was necessary for the purposes of the railroad, and when these purposes are accomplished, the land should revert to the original owners. This I take to be the true

meaning of the act under which the company derived its title. In the deed of conveyance to the N. Y. &c. Steam Navigation Company, it is recited that the land is no longer needed for the purposes of the railroad. I hold that there was nothing which the railroad company could convey to a grantee who does not appear to have any connection with the railroad company. I also hold that no formal technical proceedings to declare a forfeiture are necessary, and the conveyance to the navigation company is simply void, and may be treated as such," &c.

We agree with the Circuit Judge, that it will not be necessary to consider any of the points made except the one stated above, upon which the non-suit was granted. In Waterman on the Law of Corporations, vol. 1, p. 627, section 164, the rule of law as to the right of corporations to purchase property is stated as follows, viz: "Among the powers or capacities incident to the corporations at common law, without any special mention of such power in the charter, is that of taking, holding, and transmitting in succession and alienating property, real and personal, and contracting obligations in the same manner as an individual. The only legal check to the acquisition of lands by corporations consist in those special restrictions contained in the acts by which they are incorporated, and which usually confine the capacity to purchase real estate to specified and necessary objects, and in the force to be given to the exception of corporations out of the statutes of wills." The same doctrine is stated in Angell & Ames on Corporations, section 187, and other elementary writers, as follows: "Corporations aggregate have at common law an incidental right to alien or dispose of their lands and chattels, unless specially restrained by their charter or by statute. Independent of positive law, all corporations have the absolute *jus disponendi*, neither limited as to objects nor circumscribed as to quantity." The rule in this State is stated in *Ex parte The Greenville Academies*, 7 Rich. Eq., 482, as follows: "All corporations, if not disabled by statute, have by law a general right of alienating their property, and their consequent powers of appointing trustees, or any disposition made by them, is coextensive with this right," &c. As we

understand it, at the time the railroad company acquired the land in question for the purpose indicated, neither the Constitution nor any law of the State prohibited the company from acquiring the fee simple title to lands, either by condemnation or simple purchase, paying, of course, its full value.    Indeed, the right to condemn seems only to have been given "in the absence of any contract or contracts in relation to lands," &c. See the charter of the company and the act of 1835, sections· 32 and 36, 8 Stat., 415.

From the numerous records and copies of deeds introduced in evidence, it is difficult to determine the mixed question of law and fact, whether the railroad company acquired the land covered by the Cleland grant by enforced condemnation, under the bill filed by them, or by simple purchase from Toomer for the use of the road.  But we incline to think that the company acquired whatever interest they had by purchase from Toomer; and that the interpleader proceedings as to the other defendants were resorted to merely as the means of settling a disputed title, and not, in fact, to condemn the land from an unwilling party.   In the decree of the court, no reference was made to the condemnation proceedings.   The bill sets forth that the company had purchased the land from Toomer for the full price of $10,000; that the company was ready to pay the money to Toomer, and he was ready to receive it, but the other defendants had given notice not to pay, and the bill of the company prays that they may have leave to pay the money into court. The decree then goes on to discuss the title as between the parties, which it adjudges to be in Toomer, the party with whom the company had contracted, and ordered the money previously paid into court to be paid to him, which was done.   It seems to us that this was clearly a purchase of the land and payment of the purchase money.

But assuming that the railroad company originally acquired the fee simple title by the payment of the purchase money under the decree of the court, it is still earnestly urged by the defendant corporation, that as soon as the railroad company abandoned the purpose of extending their road down to deep water, the title to the land so purchased, and for which they had paid

$10,000, was instantly rendered void; that the land reverted to the original owner; that there was nothing which the company could convey to a grantee who does not appear to have any connection with the railroad company; and that really no formal technical proceeding to declare a forfeiture was necessary, and, therefore, the plaintiffs having no title, it was proper to grant the non-suit. Was this error? It must be admitted that the authorities upon the subject are in some confusion; but keeping in mind that the railroad company originally acquired, not merely an easement but the fee simple title, by purchasing the whole land for full value, we cannot clearly see upon what principle we may declare the company divested of their title, which is "simply void," and that the land had reverted to its former owner. Reverted to whom? Certainly not to the representatives of Toomer, who sold the fee simple title for full value, leaving no interest of any kind whatever remaining. There could be no reverter to the original owner, for there was no reversionary interest, and none is claimed. In that case, where would be the title, which must vest in some one?

It is stated in 1 Waterman on Corporations, 632, as follows: "So where a purchase of real estate has been lawfully made by a corporation, the purchase does not cease to be legal or the corporation cease to have a right to hold or convey the property thus acquired, merely because the object which induced the purchase has been accomplished, or no longer affords an inducement to retain it. Corporations, although limited in their own duration of life, may purchase and hold and convey, and they may sell such real estate, whenever they find it no longer necessary." See the notes referred to, and especially the case of *Old Colony R. R. Co.* v. *Evans*, 6 Gray, 25. Restrictions imposed by the charter of a corporation upon the amount of the property it may hold, cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the State which created it. *Jones* v. *Habersham*, 107 U. S., 188. In 4 Am. & Eng. Enc. Law, 233, the rule is thus laid down: "In many of the States, statutes prohibit or limit foreign corporations from acquiring real estate. Under these or similar statutes, where a corporation is incompetent to

take title to real estate, a conveyance to it is not void, but only voidable.    The sovereign alone can object; it is valid until assailed in a direct proceeding, instituted for that purpose."

The judgment of this court is, that the non-suit granted below be set aside, and the case remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE MCIVER and MR. JUSTICE POPE concurred in the result.

A petition was filed for the rehearing of this appeal, the grounds whereof appear in the following order endorsed thereon - July 28, 1894,

PER CURIAM.    We have carefully considered the petition for a rehearing in this case, and are of opinion that it presents no grounds which would justify an order for a rehearing.

2    The judgment of non-suit granted by the Circuit Court having been set aside and a new trial having been ordered, it does not seem to us necessary for this court to have considered and determined all of the points claimed to have been overlooked, as these points may be presented upon the new trial, and after having been passed upon by the Circuit Judge in the first instance, may be reviewed under another appeal in this case.    This court having reached the conclusion that the Circuit Judge had erred in granting the non-suit upon the ground upon which it was rested, did not deem it necessary to consider and determine any other ground upon which it is claimed that the non-suit should have been granted, which was not passed upon by the Circuit Judge in his decree.    This court did not decide, and did not intend to decide, any of the points not passed upon by the Circuit Judge, as these points may be made and decided upon the new trial which has been ordered; and hence we do not think any rehearing is necessary.    It is, therefore, ordered, that the petition for a rehearing be dismissed, and that the order heretofore granted staying the remittitur be revoked.