22076

INDIGO REALTY COMPANY, LTD., Respondent, v. CITY OF CHARLESTON, South Carolina, Appellant.

(314 S. E. (2d) 601)

Supreme Court

*William B. Regan,* Charleston, *for appellant.*

*Irving Levkoff,* of *Steinberg, Levkoff, Spitz & Goldberg,* Charleston, *for respondent.*

Heard March 19, 1984.

Decided April 3, 1984.

HARWELL, Justice:

Respondent Indigo Realty was granted an injunction ordering the appellant City of Charleston to reconvey certain property to it for the original purchase price. We reverse.

In equitable actions tried by the judge without a reference, this Court can find facts in accordance with its view of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 226 S. C. 81, 221 S. E. (2d) 773 (1976).

The City threatened condemnation of the Dumas Building for the alleged purpose of widening Market Street in order to facilitate the development of Charleston Center. The respondent property owners negotiated a purchase price with the City of $149,500. Title passed to the City on September 10, 1980. The City stipulated that it would have taken the property through eminent domain proceedings had it not acquired the property through purchase.

On March 1, 1981, only six months after acquiring the Dumas Building, the City encountered financial problems in seeking to widen Market Street, and on May 12, 1981 the City announced its decision not to widen the street. Indigo Realty subsequently requested the City to resell the property to it for the original purchase price. On June 9, 1981, the City Council

of Charleston gave first reading to an ordinance authorizing the Mayor to enter an agreement with the private developer of the Charleston Center to exchange the Dumas Building for the property immediately south of the building. The City concedes that the property would be used for a private purpose.

The City appeals from the trial court's grant of an injunction ordering reconveyance of the property to the respondent at the original purchase price.

The issue presented for decision is, as stated by the ■ trial court:

Whether a court of equity may require a municipal corporation, which has acquired property under threat of condemnation, to offer the prior owner an opportunity to repurchase the property when, six months after transfer of ownership, the municipality abandons the public use ... and decides to transfer it to a private developer for private use.

It is the general rule of common law that, when a fee ■ simple is acquired by purchase or by eminent domain and the original use is abandoned, there is no reversion. Nichols, Law of Eminent Domain § 9.36[3]. However, the trial court held that, since the respondent had no adequate legal remedy, an equitable remedy of repurchase was appropriate. We believe that fashioning this equitable remedy undermines the legal rule and exceeds the court's equity powers.

South Carolina adheres to the common law rule. In a ■ legal action for ejectment initiated after a change in the use of property nearly forty years after transfer, the Court followed the common law rule that a change in use does not cause title to automatically revert to the prior owners. *Chamberlain v. Northeastern Ry. Co.*, 41 S. C. 399, 19 S. E. 743 (1894). The subsequent abandonment of the original purpose for which the property is taken does not affect the validity of the condemnation. The validity of title is determined by the conditions existing at the time of the taking. *Timmons v. South Carolina Tricentennial Comm'n.*, 254 S. C. 378, 175 S. E. (2d) 805 (1970), cert. denied, 400 U. S. 986, 91 S. Ct. 460, 27 L. Ed. (2d) 435 (1971).

The respondent points out that this Court has held that the City of Charleston could not condemn land and lease it to the private developers of City Center for construction of a parking facility. *Karesh v. City Council of Charleston,* 271 S. C. 339, 247 S. E. (2d) 342 (1978). In *Karesh* the long-term lessors of the parking facility had virtually complete control over it. We stated that benefit to the public was not sufficient for exercise of the eminent domain power but that the public must have an enforceable right to a definite use of the property.

In the instant case, the intended public use was the widening of Market Street. The public would have enjoyed specific rights to the use of the street. Therefore, a public use was present.

We are not willing to place a cloud on the title of each parcel of property obtained through exercise of the eminent domain power by creating an equitable right of repurchase. The result in this case may seem harsh, and we are sympathetic toward the respondent property owners. Yet, the decision to grant a repurchase right to property owners who sell under threat of condemnation is for the legislature.[1]

The judgment of the trial court is, accordingly,

Reversed.

LITTLEJOHN, C. J., NESS and GREGORY, JJ., and PAUL M. MOORE, as Acting Associate Justice, concur.