FERRELL v. DEPT. OF TRANSPORTATION

[104 N.C. App. 42 (1991)]

E. V. FERRELL, JR., DOUGLAS DILLARD AND ROSENA F. DILLARD v.
DEPARTMENT OF TRANSPORTATION

No. 9021SC1154

(Filed 3 September 1991)

1. **State § 4 (NCI3d)— eminent domain—surplus property—
   sovereign immunity—exceptions**

   The trial court did not err by denying defendant's motion
   to dismiss, based on sovereign immunity, in an action arising
   from a DOT determination to sell property which it had previous-
   ly acquired by eminent domain. There is an exception to
   sovereign immunity when public officers whose duty it is to
   supervise and direct a state agency attempt to invade or
   threaten to invade the personal or property rights of a citizen
   in disregard of the law. Plaintiffs' complaint clearly alleges
   that public officials of DOT have invaded the property rights
   of plaintiffs by refusing to sell the surplus land back to plain-
   tiffs at the original purchase price.

   **Am Jur 2d, Eminent Domain § 115.**

2. **Declaratory Judgment Actions § 7 (NCI4th)— eminent do-
   main—surplus property—justiciable controversy**

   An actual and justiciable controversy existed in an action
   arising from a DOT determination to sell property which it
   had previously acquired by eminent domain where plaintiffs
   were placed in a position in which their statutory rights under
   N.C.G.S. § 136-19 were in peril. It is unreasonable to require
   plaintiffs to wait until the Board, the Council of State and
   the Governor approve the disposition of the property before
   taking action.

   **Am Jur 2d, Declaratory Judgments §§ 25, 29, 31, 178.**

3. **Eminent Domain § 6 (NCI4th)— surplus property—recon-
   veyed—compensation returned with interest—State not al-
   lowed profit**

   N.C.G.S. § 136-19, when read consistently with N.C.G.S.
   § 40A-63 and N.C.G.S. § 40A-65 as well as the Fifth Amend-
   ment to the U.S. Constitution, dictates that the State not
   profit from overreaching seizures by eminent domain. To allow
   the State to sell the land back to the original landowner at

current fair market value, in this case nearly ten times the value of the original purchase price, would be to allow the State to profit from its own injudicious and excessive taking at the expense of the landowner. To put the parties back in the position they would have occupied had the land not been condemned, the original landowners or their successors in interest should return the compensation they received, plus interest, and the State should reconvey the land to plaintiffs.

**Am Jur 2d, Eminent Domain § 115.**

Judge GREENE dissenting.

APPEAL by defendant, the Department of Transportation, from a judgment entered 9 August 1990 by *Judge William H. Freeman* in FORSYTH County Superior Court. Heard in the Court of Appeals 15 May 1991.

*Petree, Stockton and Robinson, by F. Joseph Treacy, Jr. and Kenneth S. Broun, for plaintiffs-appellees.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Archie W. Anders and Associate Attorney General Elaine A. Dawkins, for defendant-appellant.*

LEWIS, Judge.

This is a declaratory judgment action also seeking injunctive relief. On 17 April 1972 the Department of Transportation, [DOT], acquired by eminent domain 34.93 acres of an 86.08 acre tract in Forsyth County owned in fee simple by E. V. Ferrell, Jr. and J. C. Smith. By consent judgment dated 14 October 1975 the DOT paid Ferrell and Smith a total of $303,500.00 in compensation. An additional 5.84 acres was claimed by DOT in 1986. The DOT acquired this property for the construction of a portion of Corporation Freeway, which was later incorporated into Interstate 40 bypass. Due to changes in plans and designs, 29.107 acres of the acquired property has not been and will not be used by the DOT.

Since the time of the acquisition of the subject property in 1972 by the DOT, the ownership of the adjacent property has changed. Smith conveyed his 20% undivided interest in fee simple in the 45.31 remaining acres to the plaintiffs Dillard on 31 December 1987. Included were all rights under N.C.G.S. § 136-19, which states in part:

If any parcel is acquired in fee simple as authorized by this section and the Department of Transportation later determines that the parcel is not needed for highway purposes, first consideration shall be given to any offer to repurchase made by the owner from whom said parcel was acquired or the heirs or assigns of such owner.

Plaintiffs contacted the Board of Transportation on or about 25 August 1988 for the purpose of re-acquiring the unused 29.107 acres. In response to these inquiries the DOT had two appraisals made of the property. W. R. Weir, Jr., a fee appraiser hired by DOT, valued the property at $1,819,175.00 in November 1988, and Max Loflin, a staff appraiser in DOT's Winston-Salem office, valued the property at $2,294,500.00 during the same month. The DOT's Right of Way Branch determined the lower figure to be more accurate and DOT wrote to plaintiff Ferrell on 6 January 1989 that the appraised value was $1,819,175.00. Mr. Ferrell objected to the value and cited an appraisal he had made of the property reflecting a value of $1,018,750.00. Attorneys from both sides met to reach a settlement on 12 September 1989. No agreement was reached.

On 17 October 1989 DOT informed plaintiff Ferrell, by letter, that it had reevaluated its position and would not be willing to sell the property for less than $2,294,500.00, and that this offer would be held open only until 8 November 1989.

Plaintiffs instituted this action on 6 November 1989 seeking declaratory and injunctive relief pursuant to N.C.G.S. § 136-19. Plaintiffs contend that N.C.G.S. § 136-19 and accompanying departmental rules dictate that the DOT must sell the subject property to the plaintiffs at the same price DOT paid for it seventeen years earlier, plus interest at the legal rate.

After a hearing on 30 July 1990, the court granted plaintiffs' summary judgment motion and denied defendant's motion to dismiss and for summary judgment. The trial court interpreted N.C.G.S. § 136-19 to require DOT to reconvey the property to plaintiffs at the original purchase price of $252,905.18 plus interest at the legal rate compounded annually, amounting to $821,938.25. The trial court enjoined the DOT from disposing of the property to anyone other than the plaintiffs and stated that the injunction would be dissolved if plaintiffs did not tender the amount within the time frame set forth in the judgment.

FERRELL v. DEPT. OF TRANSPORTATION

[104 N.C. App. 42 (1991)]

[1]   The DOT contends that the trial court erred in denying its motion to dismiss pursuant to North Carolina Rule of Procedure 12(b)(1) and (2). The defendant maintains that the trial court lacked jurisdiction over the DOT because DOT has not consented to be sued or otherwise waived its sovereign immunity.

As an agency of the state, the DOT is entitled to absolute immunity in the absence of consent or statutory waiver, *Schloss v. State Highway and Public Works Commission*, 230 N.C. 489, 491-92, 53 S.E.2d 517, 518 (1949), with two exceptions: (1) when public officers whose duty it is to supervise and direct a state agency attempt to invade or threaten to invade the personal or property rights of a citizen in disregard of law, or (2) where plaintiffs as taxpayers attempt to prevent an expenditure of money that is either unauthorized by statute or in disregard of the law. *Orange County v. Department of Transportation*, 46 N.C. App. 350, 378, 265 S.E.2d 890, 909 (1980).

Plaintiffs' complaint clearly alleges that public officials of the DOT have invaded the property rights of the plaintiffs by refusing to sell the surplus land back to the plaintiffs at the original purchase price. This case thus falls within the first of the two exceptions enumerated by this Court in *Orange County v. Department of Transportation, id.*, insofar as the plaintiffs allege that public officials have interfered with their property rights under N.C.G.S. § 136-19.

[2]   Defendant next argues that the trial court erred in denying defendant's motion for summary judgment because the complaint does not allege a justiciable controversy and is not ripe for adjudication. In an action for declaratory judgment under N.C.G.S. § 1-253, two factors to be considered in determining whether or not a justiciable controversy exists are whether some actual controversy exists beyond a mere difference of opinion between the parties and whether or not litigation appears to be unavoidable. *Gaston Board of Realtors v. Harrison*, 311 N.C. 230, 235, 316 S.E.2d 59, 61-62 (1984). Appellant argues that this case is not a justiciable controversy because negotiations are still under way, the DOT has not yet declared the property to be surplus, and the Board of Transportation, Council of State and Governor have not approved the disposition of the property.

We hold that an actual and justiciable controversy does exist. *Id.* The DOT has effectively declared the property surplus by offer-

ing it to the plaintiffs at a stated price. The DOT required an answer by 8 November 1989 conditioning plaintiffs' rights under N.C.G.S. § 136-19 on assent to the Department's offered price. The plaintiffs were placed in a position where their statutory rights under N.C.G.S. § 136-19 were placed in peril. The declaratory action is therefore a justiciable controversy insofar as litigation is unavoidable, and the dispute involves more than a mere disagreement about the rights of the parties. *Id.* Where the Board of Transportation, the Council of State and the Governor approve the disposition only after a price is agreed to and the terms of a sale arranged, and where the plaintiffs contend that they are being deprived of their statutory rights with respect to the terms of the sale, it is unreasonable to require plaintiffs to wait until the Board, the Council of State and the Governor approve of the disposition of the property before taking action.

[3] The appellant contends the trial court erred in interpreting N.C.G.S. § 136-19 to require that the State sell the land back to the original landowner at the original purchase price where the statute states only that "first consideration" should be given to any offer made by the landowner. Statutes are to be construed consistently with other statutes treating the same subject matter, *Town of Morehead City v. North Carolina Department of Transportation*, 74 N.C. App. 66, 70, 327 S.E.2d 602, 604 (1985), and with constitutional principles. The right to compensation for property taken under the power of eminent domain does not rest solely upon statute because property owners have a constitutional right to just compensation for takings. *Browning v. North Carolina State Highway Commission*, 263 N.C. 130, 137, 139 S.E.2d 227, 231 (1964). The Fifth Amendment to the United States Constitution states that private property may not be taken for public purpose without just compensation. The existence of a public use is a prerequisite to the exercise of the power of eminent domain by the DOT to condemn private property. *State Highway Commission v. Batts*, 265 N.C. 346, 355, 144 S.E.2d 126, 173 (1965).

The law of North Carolina is clear that neither the State nor other authorities with the right of eminent domain are allowed to profit from the increase in market value due to condemnation proceedings. The relevant statutes state as follows:

> The determination of the amount of compensation shall reflect
> the value of the property immediately prior to the filing of

the petition . . . and except as provided in the following section shall not reflect an increase or decrease due to the condemnation.

The value of the property taken . . . does not include an increase or decrease in value before the date of valuation that is caused by (i) the proposed improvement or project for which the property is taken, (ii) the reasonable likelihood that the property would be acquired for that improvement or project; or (iii) the condemnation proceeding in which the property is taken.

N.C.G.S. § 40A-63; N.C.G.S. § 40A-65. *See also Barnes v. Highway Commission*, 250 N.C. 378, 109 S.E.2d 219 (1959). Where the legislature clearly intends that the landowner should not profit from the increase in value of the land due to the condemnation, neither should the State profit upon resale of surplus property. To allow the State to sell the land back to the original landowner at current fair market value, in this case nearly ten times the value of the original purchase price, would be to allow the State to profit from its own injudicious and excessive taking at the expense of the landowner. The taking of land by the State from a property owner by eminent domain is unlike other transfers of property in that the property owner is deprived of the right to dispose of her property as she chooses or to select the time, method or price for the transfer. Where land taken by eminent domain turns out not to be required for public use, the legislature has stated that "first consideration should be given to any offer made by the original owner or their heirs or assigns," N.C.G.S. § 136-19, and where the legislature has also expressly intended that "just compensation" does not include the increase in market value due to the condemnation, N.C.G.S. § 40A-63, N.C.G.S. § 40A-65, we are of the opinion that the State should not be allowed to profit from the condemnation and the parties should, as far as possible, be put back into the position they would have been in but for the condemnation.

In *First American National Bank v. State of Minnesota*, 322 N.W. 2d 344 (Minn. 1982), the Supreme Court of Minnesota was faced with the same issue. The Minnesota statute analogous to N.C.G.S. § 136-19 stated that the surplus land "shall first be offered for reconveyance to such previous owner or surviving spouse," and, like N.C.G.S. § 136-19, did not specify the terms of repurchase. The Minnesota Supreme Court found:

FERRELL v. DEPT. OF TRANSPORTATION

[104 N.C. App. 42 (1991)]

> We think an overriding objective of . . . (the statute) is to restore, to the extent possible the *status quo ante*. . . . Put another way, we do not think the legislature intended the state to profit from sudden appreciation in land values occasioned by public improvements for which the land was taken but never used. To hold otherwise would be to . . . encourage a practice of condemning more land than is reasonably necessary for public purposes. . . . We are also persuaded by common law principles of eminent domain which we think are applicable in ascertaining intent. . . . As we stated [previously] [citation omitted] 'just compensation within the meaning of the . . . Fifth and Fourteenth Amendments of the federal Constitution, does not include the right to any increment in value resulting from the taking.' Conversely, when the state reconveys the land, it should not profit from the sudden appreciation in land values due to public improvements.

*Id.* To put the parties back in the position they would have been had the land not been condemned, the original landowners or their successors in interest should return the compensation they received, plus interest, and the State should reconvey the land to the plaintiffs.

We hold that N.C.G.S. § 136-19, when read consistently with N.C.G.S. § 40A-63, and N.C.G.S. § 40A-65 as well as with the Fifth Amendment to the U.S. Constitution, dictates that the State not profit from overreaching seizures by eminent domain.

The decision of the trial court is therefore

Affirmed.

Judge EAGLES concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree with the majority that the trial court properly denied the defendant's motion to dismiss. I further agree that this case presents an actual and justiciable controversy. I do not agree, however, that this case presents an issue of an "injudicious and excessive" taking by the State of North Carolina. Whether the amount of land taken is consistent with the purpose of the taking is an issue that must be raised at the time of the taking. N.C.G.S.

§ 40A-47 (1984); N.C.G.S. § 136-108 (1986). Here, there is no dispute regarding the appropriateness of the taking, and therefore whether the taking may have been "injudicious and excessive" is not now presented. This case instead relates to the manner for disposing of condemned property which is no longer needed by the Department of Transportation for highway purposes.

Pursuant to N.C.G.S. § 136-19 (1986 & Supp. 1990), the Department of Transportation "possesses the sovereign power of eminent domain, and by reason thereof can take private property [in fee simple] for public use for highway purposes." *Moore v. Clark*, 235 N.C. 364, 367, 70 S.E.2d 182, 185 (1952). When a governmental unit or other condemnor pays just compensation to a property owner for his private property and takes the property in fee simple for a public use, "upon a change or abandonment of the public use the land can be disposed of by the government, agency or condemnor without limitation as to any rights of the former owner." J. Webster, Webster's Real Estate Law in North Carolina § 400 (3d ed. 1988); *see also Mainer v. Canal Auth. of Florida*, 467 So.2d 989, 992 (Fla. 1985); *Indigo Realty Co. v. City of Charleston*, 314 S.E.2d 601, 602 (S.C. 1984); 26 Am. Jur. 2d *Eminent Domain* §§ 142, 147 (1966). Therefore, absent a statute to the contrary, if the governmental unit or other condemnor abandons the public use for which the property was originally acquired and decides to sell the property to a third party, the former owner of such property cannot require the governmental unit or other condemnor to sell the property back to him at the original purchase price. *Indigo*, 314 S.E.2d at 602-03 (approximately nine months after acquiring property under threat of condemnation for public purpose, city decided to sell property to private developer for private purpose).

Consistent with the common law, our General Assembly has provided that

> [w]hen any property condemned by the condemnor is no longer needed for the purpose for which it was condemned, it may be used for any other public purpose or may be sold or disposed of in the manner prescribed by law for the sale and disposition of surplus property.

N.C.G.S. § 40A-10 (1984). Our General Assembly has modified the common law, however, in the context of surplus property originally condemned for highway purposes. *See* N.C.G.S. § 4-1 (1986). By statute,

[i]f any parcel is acquired in fee simple as authorized by this section and the Department of Transportation later determines that the parcel is not needed for highway purposes, first consideration shall be given to any offer to repurchase made by the owner from whom said parcel was acquired or the heirs or assigns of such owner.

N.C.G.S. § 136-19.

As authorized by N.C.G.S. §§ 40A-10, 136-18(2) (1986 & Supp. 1990), 136-19, and 143B-350(f), (g) (1990), the Department of Transportation has promulgated the following pertinent regulations relating to the sale of surplus lands:

Should the Department of Transportation purchase a property *in its entirety* for right of way purposes and at a later date reduce the right of way, thus creating a residue, the original owner shall be offered the first refusal to purchase the residue. The purchase price is to be negotiated with the *former owner* or other prospective buyers taking into consideration the purchase price paid by the Department of Transportation, the current value of the property, and the proportionate part of the entire tract being retained by the Department of Transportation. In the event the former owner does not desire to repurchase the residue area, the residue shall be offered for sale at public sale with the right reserved to reject all bids.

N.C. Admin. Code tit. 19A, ch. 2, sub. ch. 2B, sec. .0143(b) (Feb. 1989) (emphases added).

When a court construes a statute, it must "ensure that the purpose of the legislature, the legislative intent, is accomplished." *Electric Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). "Legislative purpose is first ascertained from the plain words of the statute." *Id.* Furthermore, "[t]he construction of statutes adopted by those who execute and administer them is evidence of what they mean." *Commissioner of Ins. v. N.C. Auto. Rate Admin. Office*, 294 N.C. 60, 67, 241 S.E.2d 324, 329 (1978). The Department has interpreted the "first consideration" requirement of N.C.G.S. § 136-19 to mean that "the original owner shall be offered the first refusal to purchase" the surplus property and that the Department shall negotiate with the original owner the repurchase price. N.C. Admin. Code tit. 19A, ch. 2,

FERRELL v. DEPT. OF TRANSPORTATION

[104 N.C. App. 42 (1991)]

sub. ch. 2B, sec. .0143(b). This interpretation of the "first consideration" requirement is reasonable in light of the plain words of N.C.G.S. § 136-19. However, the Department's regulations are not entirely consistent, as they must be, with the provisions of N.C.G.S. § 136-19. *In re Trulove*, 54 N.C. App. 218, 221, 282 S.E.2d 544, 546 (1981), *disc. rev. denied*, 304 N.C. 727, 288 S.E.2d 808 (1982) ("[a]dministrative regulations must be drafted to comply with statutory grants of power and not vice-versa").

Section .0143(b) of the Department's regulations, which section incorporates the Department's method for implementing the "first consideration" requirement of N.C.G.S. § 136-19, applies only when the Department of Transportation acquired the property "in its entirety." It does not apply to situations, as here, where the Department acquired only a portion of the owner's entire tract. North Carolina Gen. Stat. § 136-19, however, applies to "any parcel" acquired in fee simple. Furthermore, the Department's regulations do not mention, as does N.C.G.S. § 136-19, the owner's heirs' or assigns' rights to purchase the surplus property. To the extent that the regulations are inconsistent with the statutory requirements, the statutory requirements prevail. Therefore, "first consideration" as used in N.C.G.S. § 136-19 means that the former owner, his heirs, or assigns shall be offered the first refusal to purchase the surplus property, regardless of whether the Department condemned the entire tract owned by the former owner or only a portion of the former owner's property. The price for the surplus property is to be negotiated by the Department as described in Section .0143(b) of the Department's regulations. If the Department and the former owner, his heirs, or assigns are unable to negotiate a purchase price, the surplus property "shall be offered for sale at public sale with the right reserved to reject all bids." N.C. Admin. Code tit. 19A, ch. 2, sub. ch. 2B, sec. .0143(b).

Accordingly, the trial court erred in requiring the Department to reconvey the surplus property to the plaintiffs for the original purchase price plus interest. I would reverse and remand the order of the trial court.