625 S.E.2d 227

CIVIL ACTION NO.: 2001–CP–32–0711 CAROLINA WATER SERVICE, INC., Appellant,

v.

LEXINGTON COUNTY JOINT MUNICIPAL WATER AND SEWER COMMISSION, Respondent.

Civil Action No.: 2001–CP–32–0819 Town of Lexington, Appellant,

v.

Lexington County Joint Municipal Water and Sewer Commission, Respondent.

Civil Action No.: 2001–CP–32–1527 Carolina Water Service, Inc., Appellant,

v.

Lexington County Joint Municipal Water and Sewer Commission, Respondent.

Civil Action No.: 2001–CP–32–1534 Town of Lexington, Appellant,

v.

Lexington County Joint Municipal Water and Sewer Commission, Respondent.

Civil Action No.: 2002–CP–32–0036 Town of Lexington, Appellant,

v.

Lexington County Joint Municipal Water and Sewer Commission, Respondent.

Civil Action No.: 2002–CP–32–0078 Lexington County Joint Municipal Water and Sewer Commission, Condemnor, Respondent,

v.

Carolina Water Service, Inc., Utilities, Inc., Landowners, Appellants,

Town of Lexington, Other Condemnee, Appellants.

Unknown Claimants Civil Action No.: 2002–CP–32–0083 Carolina Water Service, Inc., Appellant,

v.

Lexington County Joint Municipal Water and Sewer Commission, Respondent.

**No. 4047.**

Court of Appeals of South Carolina.

Heard Sept. 13, 2005.

Decided Nov. 21, 2005.

Withdrawn, Substituted and Refiled Jan. 20, 2006.

Rehearing Denied Jan. 20, 2006.

144

Clifford O. Koon, Jr., K. Chad Burgess, Paige J. Gossett, John M.S. Hoefer, all of Columbia and Timothy E. Madden, of Greenville, for Appellants.

Joel W. Collins, Jr. and William A. Bryan, Jr. both of Columbia and Nikki G. Setzler, of West Columbia, for Respondents.

PER CURIAM:

This case arises out of a condemnation action initiated by Lexington County Joint Municipal Water and Sewer Commission (Joint Commission) to acquire certain facilities owned by Carolina Water Service (Carolina Water) and Utilities, Inc. (Utilities). In response, Carolina Water, Utilities and the Town of Lexington (Town) filed actions challenging the Joint Commission's right to condemn these systems (Challenge Actions). Carolina Water then sought to stay the condemnation proceeding pursuant to section 28–2–470 of the South Carolina Code (1991). The circuit court issued an order staying both the condemnation proceeding and the Challenge Actions until the resolution of a related case then pending before the South Carolina Administrative Law Court.[1] At issue in this appeal is the authority of the circuit court to lift that portion of the stay relating to the Challenge Actions. We affirm.

## FACTS

This case relates to an ongoing dispute concerning water service in Lexington County. Carolina Water is a private wastewater utility company that owns and operates several wastewater treatment facilities, including the I–20 facility and the Watergate facility, which are the subjects of this litigation. Carolina Water is a voting member on the Central Midlands Council of Governments (Council), which is a regional council of county and municipal governments with various planning responsibilities for the Central Midlands region. The Town is also a voting member on the Council.

Section 208 of the federal Clean Water Act provides a framework for states, through local and regional governmental authorities; to create and implement area-wide waste treatment management plans to control water pollution. Pursuant to federal law, the Governor has designated the Council as the

---

1. By Act No. 202, effective April 26, 2004, the name of the South Carolina Administrative Law Judge Division was changed to the South Carolina Administrative Law Court.

area-wide waste treatment-planning agency for the Central Midlands region. Under state law, the South Carolina Department of Health and Environmental Control (DHEC) has been designated the state agency authorized to implement South Carolina's Continuing Planning Process, which must be submitted to the Environmental Protection Agency (EPA) under the Clean Water Act. The Council is responsible for creating and updating a Section 208 Plan for the Central Midlands region. DHEC is responsible for certifying the Section 208 Plan with the EPA.

In 1993, the Section 208 Plan for the Central Midlands region was amended to require the closure of Carolina Water's I–20 and Watergate facilities. A 1997 amendment called for the removal of all domestic wastewater discharges into the lower Saluda River and also provided that the I–20 and Watergate facilities be replaced by connection to the Town's regional sewer system.

A dispute erupted between Carolina Water and the Town concerning the financial terms under which Carolina Water would connect the I–20 and Watergate facilities to the Town's regional sewer line. In 2000, Carolina Water and the Town entered into a compromise agreement which would allow the I–20 plant to continue discharging wastewater into the Saluda River on a permanent basis after expanding the plant to handle 990,000 gallons per day. This agreement was submitted to the Council, which adopted the proposed amendment to the Section 208 Plan and transmitted it to DHEC for certification.

DHEC rejected the proposed amendment. Among the reasons for the rejection was the amendment's inconsistency with the existing 208 Plan's focus on providing more cost-effective water service by consolidating small, public or private domestic wastewater facilities into larger public, regional facilities. Additionally, the proposed amendment authorized continued discharges into the lower Saluda River, which has been designated as a unique natural resource qualifying for special protections under the South Carolina Scenic Rivers Act, S.C.Code Ann. § 49–29–230(3) (Supp.2004). Finally, the proposed amendment did not consider alternative proposals that would allow for implementation of the aims of the existing 208

Plan. One such proposal cited was an effort by the Lexington County Joint Municipal Water and Sewer Commission (Joint Commission) to acquire the I–20 facility through its eminent domain power and then to connect it to the Town's regional sewer line.

An appeal was filed with the Administrative Law Court challenging DHEC's authority to nonconcur in the amendment to the Section 208 Plan. On March 6, 2001, however, before the Council adopted the amendment to the Section 208 Plan, the Joint Commission initiated the instant condemnation action to acquire the I–20 and Watergate facilities. Carolina Water, Utilities, and the Town filed the Challenge Actions and moved for enforcement of the automatic stay pursuant to section 28–2–470 of the South Carolina Code.

On October 3, 2002, after the DHEC case had been heard before the Administrative Law Judge (ALJ), but before the ALJ issued an opinion, the circuit court issued an order staying all proceedings relating to the condemnation action pending resolution of the matter before the ALJ. The circuit court found that the matter before the ALJ, involving the validity of the Section 208 Plan, would control the future use of the wastewater treatment facility at issue in the instant case, and would therefore have a direct impact on the issue of the Joint Commission's right to condemn Carolina Water's facility.

The ALJ subsequently issued an opinion reversing DHEC's decision. The ALJ found that DHEC had no authority to refuse certification of the plan once it was adopted by the Council. DHEC was therefore ordered to certify the Section 208 amendment allowing Carolina Water's facility to remain in operation. The ALJ's decision was appealed to the Full Board of DHEC.

In the interim, the Joint Commission filed a Rule 59(e) motion requesting that the circuit court reconsider its order imposing the stay in the instant matter. In this motion, the Joint Commission argued that the stay order exceeded the bounds of the automatic stay under section 28–2–470 in that it stayed not only the condemnation action, but the Challenge Actions as well. The Joint Commission maintained that the court's action was improper because it violated the statutory

priority given to eminent domain actions under section 28–2–310(C) of the South Carolina Code (1991), in that final resolution of the Section 208 Plan matter before the ALJ would have no bearing on the Joint Commission's condemnation action.

In June of 2003, a status conference was held, and during this conference, the propriety of lifting the stay was discussed. Following the status conference, the circuit court decided to dissolve the stay. On February 4, 2004, the circuit court issued an order lifting the stay and allowing the Challenge Actions to go forward. The automatic stay of the condemnation action pursuant to section 28–2–470 remained intact, however. The circuit court also issued a scheduling order on the same date.

Carolina Water filed a motion to alter or amend requesting the circuit court reconsider its ruling. A motion for restoration of the stay or, in the alternative, for supersedeas was also filed. While these motions were pending, the DHEC Board issued an order reversing the decision of the ALJ. The circuit court then denied Carolina Water's motions. Carolina Water, Utilities, and the Town (Appellants) have appealed from the order lifting the stay.

## STANDARD OF REVIEW

The circuit court has discretion whether to grant a stay of a matter pending before the court. *Talley v. John–Mansville Sales Corp.,* 285 S.C. 117, 119, 328 S.E.2d 621, 623 (1985); *City of Spartanburg v. Belk's Dep't Store of Clinton,* 199 S.C. 458, 480, 20 S.E.2d 157, 167 (1942). Accordingly, the appropriate standard of review is abuse of discretion. "An abuse of discretion arises where the [circuit] court was controlled by an error of law or where its order is based on factual conclusions that are without evidentiary support." *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 398, 520 S.E.2d 142, 155 (1999).

## LAW/ANALYSIS

The primary issue in this case is whether the circuit court erred in lifting the stay as to the Challenge Actions. However, the Joint Commission raises several preliminary issues

relating to the appealability of the stay order. We address each in turn.

## I. Appealability of the Stay Order

### A. Failure to Provide a Complete Record

The Joint Commission first argues that Appellants' arguments have not been preserved for appeal because they failed to provide an adequate record. However, the Joint Commission fails to explain how the record is deficient. Conclusory arguments constitute an abandonment of the issue on appeal. *See Solomon v. City Realty Co.,* 262 S.C. 198, 201, 203 S.E.2d 435, 436 (1974). A reference to supporting authority without any discussion of their applicability is conclusory and constitutes an abandonment of the party's reliance on those cases. *State v. Tyndall,* 336 S.C. 8, 16, 518 S.E.2d 278, 282 (Ct.App.1999). Therefore, this argument is deemed abandoned.

### B. Appellants Lack Standing Because They Are Not Aggrieved Parties

The Joint Commission next argues that Appellants lack standing to bring the appeal because they are not aggrieved parties. We disagree.

Rule 201, SCACR, provides that only parties aggrieved by an order may appeal. "A party is aggrieved by a judgment or decree when it operates on his or her rights of property or bears directly on his or her interest." *Beaufort Realty Co. v. Beaufort County,* 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct.App.2001).

The Joint Commission maintains that Appellants have not been aggrieved by the lifting of the stay because the circuit court lifted only that portion of the stay relating to the Challenge Actions, but left the statutory automatic stay of the condemnation action intact. This argument is without merit because it is the actions instituted by each of the Appellants that the lifting of the stay allows to go forward. In the original stay order, the circuit court found that the matter pending before the ALJ would have a direct impact on the issue of the Joint Commission's right to condemn the facility, a matter central to their cases. The resolution of this case in

favor of the Joint Commission and the resulting condemnation of the property would preclude Carolina Water from being able to repurchase the property should the DHEC case be decided in its favor. *See Indigo Realty Co., Ltd. v. City of Charleston*, 281 S.C. 234, 237, 314 S.E.2d 601, 603 (1984) (holding that there is no equitable right of repurchase once property has been taken through the exercise of the eminent domain power). Accordingly, we find each of the Appellants had standing to appeal as aggrieved parties under Rule 201.

### C. Standing of the Town and Utilities to Appeal the Order

■ The Joint Commission further argues that Appellants lack standing to appeal the order lifting the stay because Appellants do not have a property interest in the subject property of the condemnation action. This argument is not appropriate for review at this juncture as the only issue before us is whether the circuit court abused its discretion by lifting the stay. Any challenge to standing can be lodged when a final order is issued.

### D. Interlocutory Nature of the Order

■ The Joint Commission also argues the order is not appealable because it is an interlocutory order and does not involve the merits. See S.C.Code Ann. § 14-3-330 (1976 & Supp.2004). In *Hiott v. Contracting Services*, 276 S.C. 632, 633, 281 S.E.2d 224, 225 (1981), the supreme court found that an order granting a stay was immediately appealable, stating "[i]n this State, a stay is appealable." By inference, an order lifting a stay is also appealable. We therefore proceed to the merits.

## II. Merits of the Appeal

■ Appellants argue that the order lifting the stay was an abuse of discretion because it was not supported by adequate facts and was controlled by an error of law. We disagree.

Section 28-2-470 of the South Carolina Code (1991) authorizes a landowner to bring a separate action challenging a condemnor's right to condemn the subject property. That section also provides that "[a]ll proceedings under the Con-

demnation Notice are automatically stayed until the disposition of the action. . . ." *Id.* Consequently, when the Challenge Actions were filed, the Joint Commission's condemnation proceeding was automatically stayed by operation of law. However, the circuit court went further in its stay order and also stayed the Challenge Actions pending resolution of the related DHEC case then before the ALJ.

The order lifting the stay in this case did not purport to disturb the statutory stay on the condemnation proceeding, but dissolved the stay only as to the Challenge Actions. Therefore, section 28–2–470 is not implicated, and the only question is whether the order lifting the stay prejudiced Appellants in some manner so as to constitute an abuse of discretion.

Appellants first argue the circuit court abused its discretion in lifting the stay because the only thing that happened subsequent to the order granting the stay was the reversal of the ALJ's decision by the DHEC Board. The circuit court cited two pertinent factors in reaching its decision to lift the stay: (1) the long delay in waiting for resolution of the appeals in the DHEC case; and (2) provisions in the South Carolina Eminent Domain Act which assign priority to condemnation cases.

A long delay in waiting for resolution of a related case is not a sufficient reason for refusing to grant a stay when conclusion of the proceeding before the court could act as a bar to relief in the related case. *Talley v. John–Mansville Sales Corp.,* 285 S.C. 117, 118–19 n. 2, 328 S.E.2d 621, 622–23 n. 2 (1985). The *Talley* court stressed, however, that such a stay is proper only under the most exceptional circumstances. *Id.* A stay was also found appropriate before the merger of law and equity when the same parties and the same subject matter were involved in both an action at law and a suit in equity. *Rush v. Thompson,* 203 S.C. 106, 112, 26 S.E.2d 411, 413 (1943). The court held that the equitable action should be stayed to prevent deprivation of the right to a jury trial on the legal issues. *Id.* at 112, 26 S.E.2d at 414. It is therefore appropriate to consider whether resolution of the DHEC case will finally determine some aspect of Appellants' case.

Appellants argue that resolution of the DHEC case will have a direct bearing on this case, and this is what the circuit court found in the order granting the stay. However, the Joint Commission argued at the hearing, and continues to argue, that the DHEC case will have no effect on this case because it plans to condemn the property regardless of who owns it.

The General Assembly has found that "[t]he availability of water and sewer services to assist economic development and to provide for the health, safety, and welfare of its people is a very critical matter for this state." S.C.Code Ann. § 6-25-5(1) (2004). Accordingly, the Legislature has granted the Joint Commission the eminent domain power. S.C.Code Ann. §§ 5-7-50 and 6-25-100(u) (2004). Under section 5-7-50, the Joint Commission may condemn property of non-profit water corporations, if it will provide comparable water service, and if it condemns the property for that purpose.

 Therefore, the Joint Commission may take property and provide just compensation, so long as it can show a public purpose for its action. *Timmons v. South Carolina Tricentennial Comm'n,* 254 S.C. 378, 388, 175 S.E.2d 805, 810 (1970). A public purpose is one that satisfies the constitutional public use requirement and is reasonably necessary for fulfilling the public aim. *Id.* at 389, 175 S.E.2d at 810. Legislative determinations that a contemplated use is necessary, permanent, and public are presumptively valid unless sham or fraud can be shown. *Id.* at 396, 175 S.E.2d at 814. "Public use" is a broad, elastic term. *Id.* at 391, 175 S.E.2d at 812.

In the case at bar, the Joint Commission asserts there are numerous public purposes for exercising its eminent domain power, some of which have nothing to do with section 208 of the Clean Water Act. Thus, even if the DHEC case were resolved in Appellants' favor, the Joint Commission's condemnation action would not be resolved.

Furthermore, section 28-2-310(C) of the South Carolina Code (1991) provides that an eminent domain proceeding must be given precedence over other civil cases for trial if either the condemnor or the landowner so demands. Because the Joint Commission is seeking to expedite the process, the circuit

court was within its discretion to consider the need to dissolve the stay to avoid unnecessarily delaying the condemnation action.

Appellants further contend that the stay is justifiable because of the rule announced in *Indigo Realty Co., Ltd. v. City of Charleston*, 281 S.C. 234, 314 S.E.2d 601 (1984). In *Indigo Realty* the property owner sold a building to the city after being threatened with condemnation. *Id.* at 235, 314 S.E.2d at 602. Six months later the city decided not to widen the street, thus negating the public purpose for which the property was sold. *Id.* The property owner sought an injunction ordering the City to reconvey the property. *Id.* at 235, 314 S.E.2d at 602. The court refused to do so, holding that creating an equitable right of repurchase would place an unnecessary cloud on the title of property taken through eminent domain. *Id.* at 237, 314 S.E.2d at 603.

Appellants maintain that under the *Indigo Realty* rule, if the condemnation action proceeds to a conclusion and the property is taken, they will be deprived of the benefit of a decision in their favor in the DHEC case because they would be unable to repurchase the property. However, because we have found that the Joint Commission's condemnation action would proceed even if the DHEC case is resolved in Appellants' favor, the *Indigo Realty* rule is inapplicable.

We therefore find that this case does not involve the type of "most exceptional circumstances" which would justify a stay that could delay resolution of this case for years. *See Talley*, 285 S.C. at 119 n. 2, 328 S.E.2d 621, 623 n. 2. The circuit court's reasons for its decision were sufficient to preclude a finding of abuse of discretion.[2]

## CONCLUSION

We find the order lifting the stay is immediately appealable. On the merits, we find the circuit court did not abuse its

---

2. We further note that the lifting of the stay can be sustained as an act of discretion within the circuit court's authority to control its docket. Courts have inherent power to stay proceedings in actions pending before them as part of their power to control their own docket. 1A C.J.S. *Actions* § 244 (2004). The granting or refusing of a stay is discretionary and should be exercised with caution after balancing competing interests. *Id.*

discretion in lifting the stay and allowing the Challenge Actions to go forward. Accordingly, the order is hereby

**AFFIRMED.**

HEARN, C.J., STILWELL, J., and CURETON, A.J., concur.