23066

John M. CONNOLLY, Petitioner v. PEOPLE'S LIFE INSURANCE
COMPANY OF SOUTH CAROLINA, Respondent.

(384 S. E. (2d) 738)

Supreme Court

*Desa A. Ballard* and *L. Joel Chastain,* both of *Ness,*
*Motley, Loadholt, Richardson & Poole,* Barnwell, and *Joseph*

*G. Wright, III,* of *Wright & Trammell,* Anderson, *for petitioner.*

*Clifford F. Gaddy, Jr.,* of *Foster, Gaddy & Foster,* Greenville, *John Gregg McMaster* and *Henry Dargan McMaster,* of *Tompkins & McMaster,* Columbia, *for respondent.*

Heard June 6, 1989.

Decided Sept. 25, 1989.

## AMENDED OPINION

*Per Curiam:*

This case is before the Court on a petition for rehearing. The petition for rehearing is denied. Opinion number 23066, filed August 21, 1989, is withdrawn and the following opinion is substituted as the opinion of this Court.

This case involves the Court of Appeals' interpretation of certain provisions of the South Carolina Unfair Trade Practices Act, S. C. Code Ann. §§ 39-5-10 to 39-5-160 (1985), in *Connolly v. People's Life Ins. Co. of South Carolina,* 294 S. C. 355, 364 S. E. (2d) 475 (Ct. App. 1988). We granted certiorari to review the decision and now reverse the Court of Appeals for procedural reasons, holding that it should have declined to address the merits of the UTPA claim as such was not properly presented for review.

## FACTS

While a thorough factual recitation may be found in the Court of Appeals' opinion, we summarize the facts as follows: Petitioner Connolly secured a loan from Key Life Insurance Company and gave the company a note and mortgage. When Key Life failed and was placed in liquidation, the liquidator (the South Carolina Chief Insurance Commissioner) took control of Key Life's assets and liabilities. The liquidator later assigned these assets and liabilities, including Connolly's note and mortgage, to Respondent People's Life Insurance Company of South Carolina.

A dispute arose between Connolly and People's Life concerning the balance owed on the note. Connolly claimed the note was paid in full. People's Life acknowledged that Connolly owed no more money on the note, but refused to mark

the mortgage "satisfied and cancelled" until it received its own settlement from the liquidator. People's Life eventually satisfied the mortgage, but not before Connolly's attempt to sell the mortgaged premises had fallen through because he could not deliver clear title to the potential buyer.

Connolly sued People's Life, alleging that the company violated the Unfair Trade Practices Act (UTPA) by converting his note and mortgage. The jury found that People's Life willfully violated the Unfair Trade Practices Act and awarded Connolly $75,000 actual damages. The trial judge trebled the damages award pursuant to § 39-5-140(a), and People's Life appealed.

The Court of Appeals held that People's Life's directed verdict motions were sufficiently specific to allow the trial judge to understand the grounds for the motions; that the exceptions framed by People's Life on appeal preserved for review the issue of the UTPA's applicability; and that the conversion by People's Life was not the kind of "unfair or deceptive method, act or practice" declared unlawful by the UTPA.

## DISCUSSION

I. *Trial Motions*

First, Connolly contends the Court of Appeals erred in reaching an issue which was not raised or ruled on in the trial court. We agree.

At the close of Connolly's case, counsel for People's Life moved for a directed verdict as follows:

> Your honor, with respect to the third cause of action, which alleges an unfair trade practice on the part of People's Life, I ask the Court for a nonsuit on the ground that there's been no evidence presented that says that People's Life Insurance Company did anything that was unfair or any type of bad business practice or wrongful business practice. There's just been no evidence introduced on that cause of action whatsoever.

The trial court denied the motion, ruling that evidence in the record made "unfairness" a factual issue to be decided by the jury.

When People's Life renewed its directed verdict motion at the close of all evidence, the stated ground was again insufficiency of the evidence to support an UTPA violation:

> And finally, Your Honor, I'd move for a directed verdict with respect to cause of action number 3 in that there's no evidence in this record from which an inference can be drawn that People's Life Insurance Company violated the Unfair Trade Practices Act.

Again the trial judge denied the motion, ruling that sufficient evidence existed to submit the issue to the jury. The Court of Appeals noted that the motions lacked specificity, but was satisfied that the trial judge understood the grounds to be that People's Life conversion of the note and mortgage did not violate the UTPA.

"A motion for a directed verdict shall state the specific grounds therefor." Rule 50(a), SCRCP. People's Life's initial directed verdict motion satisfied Rule 50(a) in that it was supported by a specific ground: the record lacked sufficient evidence to prove "unfair" conduct by People's Life. The trial judge denied the motion based on this ground. The Court of Appeals' reversal of the trial judge, however, was based not on an insufficiency of evidence of unfairness, but on a totally different ground: the conversion did not violate the UTPA as a matter of *law* because it was unconnected with "trade or commerce" as those terms are defined in § 39-5-10(b). The trial judge could not have understood the basis of People's Life's motions to be that the conversion was unconnected to "trade or commerce" because the motions neither raised nor encompassed such an argument. The Court of Appeals therefore based its reversal of the trial judge on a ground that was never raised or argued before him.

II. *Exceptions on Appeal*

People's Life raised ten exceptions on appeal, but only two were directed to the UTPA issue:

1. The Trial Judge did err by failing to grant Defendant's Motion for a Non-Suit, Directed Verdict and for Judgment N.O.V. by failing to dismiss the third

cause of action alleging a violation of the Unfair Trade Practices Act.

2. The Trial Judge did err by failing to grant Defendant's Motion for a Non-Suit, Directed Verdict and Judgment N.O.V. by charging the Unfair Trade Practices Act.

The Court of Appeals characterized these exceptions as "somewhat general," but sufficient for appellate review. 294 S. C. at 358, 364 S. E. (2d) at 475. We disagree. The exceptions violate Supreme Court Rule 4, § 6 in that they fail to set out complete assignments of error. The exceptions do not state *why* the UTPA cause of action should have been dismissed and *why* the UTPA should not have been charged. *See Germain v. Nichol,* 278 S. C. 508, 299 S. E. (2d) 335 (1983); *Graham v. Kerns,* 278 S. C. 197, 294 S. E. (2d) 38 (1982). An appellate court is left to "grope in the dark," searching the entire record to ascertain the issue being raised. *See Solley v. Weaver,* 247 S. C. 129, 146 S. E. (2d) 164 (1966).[1]

We have held that the Court of Appeals may not decide an issue neither presented to the circuit court nor raised by proper exception on appeal. *See Lovering v. Seabrook Island Property Owners Association,* 291 S. C. 201, 352 S. E. (2d) 707 (1987) (vacating portion of opinion in which Court of Appeals addressed issue not raised before circuit court or by exception.) The Court of Appeals itself has recognized that issues either not raised to the trial court or by proper exception on appeal present no question for appellate determination. *U. S. Leasing Corp. v. Janicare, Inc.,* 294 S. C. 312, 364 S. E. (2d) 202 (Ct. App. 1988); *Austin v. Conway Hospital, Inc.,* 292 S. C. 334, 356 S. E. (2d) 153 (Ct. App. 1987); *Bartlett v. Nationwide Mutual Fire Ins. Co.,* 290 S. C. 154, 348 S. E. (2d) 530 (Ct. App. 1986).

---

[1] *Sandel v. Cousins,* 266 S. C. 19, 221 S. E. (2d) 111 (1975), cited by the Court of Appeals in addressing the exceptions, is distinguishable. In *Sandel,* this Court was easily able to determine from the general exception, the Statement of the Case, and the briefs that the sole issue before the Court was the sufficiency of the evidence to submit the damages issue to the jury. This Court addressed that issue and reversed an involuntary nonsuit. We do not read the exceptions, Statement of the Case, and appeal briefs in the present case to even suggest the UTPA "trade or commerce" issue which the Court of Appeals reached and upon which its reversal was based.

We therefore hold that the Court of Appeals erred in basing its reversal on a ground that was neither raised to, nor ruled upon by, the trial judge and in reaching an issue which was not framed by a proper exception on appeal. Because we hold that the Court of Appeals should have declined to address the issue, we need not reach, and express no opinion on, the merits of the UTPA cause of action. This matter is remanded to the Court of Appeals for consideration of the remaining exceptions raised but not addressed in its previous opinion.

Reversed and remanded.