635 S.E.2d 81

**The STATE, Respondent,**

v.

**Kenneth E. SOWELL, Petitioner.**

No. 26199.

Supreme Court of South Carolina.

Heard May 3, 2006.

Decided Aug. 14, 2006.

Rehearing Denied Oct. 4, 2006.

Kenneth E. Sowell, of Anderson, pro se.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and State Grand Jury Chief Jennifer D. Evans, all of Columbia, for Respondent.

Justice WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Sowell,* Op. No.2005–UP–122 (Ct.App. filed Feb. 17, 2005). The Court of Appeals affirmed the circuit court's holding that Sowell was in contempt for releasing grand jury information to his private investigator. We reverse.

## FACTS

Sowell is an attorney who was hired to represent Bobby Joe Lewis, a criminal defendant who was indicted by the State

Grand Jury for trafficking methamphetamine. On March 4, 2002, the circuit court issued a protective order pursuant to S.C.Code Ann. § 14–7–1720 (Supp.2004), directing that any State Grand Jury material given to the defendants was being provided only for purposes of their trials, and that their attorneys were bound by the secrecy provisions of § 14–7–1720.[1]

Sowell hired a private investigator, Gene Gore, to look into the charges and to investigate how other witnesses would testify. According to Sowell, he had utilized Gore, who also worked as a used car salesman, numerous times in the past as a private investigator. Gore testified that he understood that he was acting as Sowell's agent, or a paralegal, while conducting his investigations.

Sowell gave Gore the Grand Jury file information forwarded to him from the Attorney General's office. At Sowell's contempt trial, the assistant solicitor questioned Gore as to whether, when Sowell left this information with him, "did he give you any instructions about what to do or anything about grand jury material, anything like that?" Gore responded negatively. However, when questioned by Sowell as to whether he was warned by Sowell not to discuss the contents of the file with anyone, Gore responded:

A. The best I can recall, you handed me that box and you said, "These are statements that have been taken from the people in this case. I want you to look through them and go investigate the ones you feel are pertinent to the upcoming case."

Q. And what did I tell you about disclosing the information from that file?

A. No, you told me to keep the box under lock and key at all times.

Sowell also testified he instructed Gore not to disclose the contents of the file or show it to anyone.

Lewis' first trafficking trial, in April 2002, ended in a hung jury. During that trial, it became evident the state had

---

1. The order does not prohibit the defendants or their attorneys from using *Brady* material for purposes of preparing for trial. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

information that a man named Floyd Eugene Ballew, Jr., a/k/a Dooney, was supplying drugs to Lewis. It also became evident at the first trial that Lewis and Dooney's supplier was a man named "Kenny," or "KC," from Greenville. Subsequent to the first trial, Dooney was added to the indictment as a co-conspirator in the trafficking ring. Dooney was arrested and, prior to Lewis' second trial, Sowell met with him in the Laurens County jail and took an affidavit and statement from him. From his meeting with Dooney, Sowell concluded Kenneth Curtis was the "Kenny" or "KC" implicated in the first trial. Sowell therefore instructed Gore to talk to Curtis and ascertain the substance of his testimony if called as a witness at the second trial.

Kenneth Curtis was called as a witness by the state at the contempt hearing. Curtis testified that he had paid Lewis' attorney fee to Sowell, and that Sowell allegedly advised Curtis he would let him know if Lewis was "going to flip on him." Curtis testified he was kept advised of the on-going investigation by Gore. On cross-exam by Sowell, however, Curtis testified that he was never told about the contents of the Grand Jury file by Gore. Gore simply advised Curtis that his name was "all over the place" and that police were about to get him.

At the conclusion of the contempt hearing, the state asserted that the only basis upon which it was seeking a finding of contempt was that Sowell had released the Grand Jury file to Gore; the state specifically advised the court it was not alleging a contempt violation based upon any disclosure by Gore to Curtis.

The circuit court found Sowell in criminal contempt of the March 4, 2002 protective order, holding that he was not authorized to release the Grand Jury information to Gore, and that he had not explained the secrecy requirements of the protective order to Gore.

The Court of Appeals affirmed the contempt finding. It found Sowell had failed to inform the court that he had disclosed the Grand Jury information to Gore, and had failed to explain to Gore the obligation of secrecy.

## ISSUE

Did the Court of Appeals err in affirming the finding of contempt?

## DISCUSSION

 Willful disobedience of an Order of the Court may result in contempt. *Spartanburg County Dep't of Social Svcs. v. Padgett,* 296 S.C. 79, 370 S.E.2d 872 (1988). A willful act is defined as one "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Id.* at 82–83, 370 S.E.2d at 874, *citing* Black's Law Dictionary 1434 (5th Ed. 1979). However, "[o]ne may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do." *Welchel v. Boyter,* 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973). In order to sustain a finding of contempt, the record must be clear and specific as to the acts or conduct upon which such finding is based. *Curlee v. Howle,* 277 S.C. 377, 287 S.E.2d 915, 918 (1982). In a criminal contempt proceeding, the state has the burden of proving the guilt of the defendant beyond a reasonable doubt. *State v. Bowers,* 270 S.C. 124, 131, 241 S.E.2d 409, 412 (1978). A determination of contempt is within the sound discretion of the trial judge, but is subject to reversal where based on a finding that is without evidentiary support or where there has been an abuse of discretion. *Pratt v. S.C. Dep't of Social Svcs.,* 283 S.C. 550, 324 S.E.2d 97 (Ct.App.1984).

Here, the trial court's protective order states, in pertinent part:

IT IS HEREBY ORDERED that the Attorney General is protected if he chooses to disclose to the attorneys for the defendants in the above-captioned cases testimony taken in the State Grand Jury and interviews of witnesses and other documents which must subsequently be disclosed under normal circumstances at trial. It is understood that the State Grand Jury material is being provided only for purposes of the trial of the above-captioned cases. The attor-

ney for the defendants and the defendants are bound by the secrecy provisions of § 14-7-1720.

IT IS FURTHER ORDERED that, pursuant to S.C.Code Ann. §§ 14-7-1700 and -1720(A) (Law. Co-op. 1976), the defendants and their attorneys are prohibited from photo-copying any State Grand Jury testimony, interviews of witnesses and any other documents that may be disclosed to the defendants and their attorneys in reference to the above-captioned case. All such materials shall be complete-ly destroyed at the conclusion of the case.

Nothing in this Order prohibits the defendants or their attorneys from using Brady material for purposes of pre-paring for trial.

■ Pursuant to S.C.Code Ann. § 14-7-1700, a defendant has the right to review and reproduce grand jury materials. This section also requires the Attorney General, subject to the limitations of S.C.Code Ann. § 14-7-1720(A) and (D), to pro-vide the defendant a copy of the transcript of the recorded testimony or proceedings. Subsection 14-7-1720(A) provides, in pertinent part, as follows:

A state grand juror, the Attorney General or his designee, any interpreter used, the court reporter, and any person to whom disclosure is made pursuant to subsection (B)(2) of this section may not disclose the testimony of a witness examined before a state grand jury or other evidence re-ceived by it except when directed by a court for [certain purposes] . . .

Subsection (B)(2) provides:

(B) In addition, disclosure of testimony of a witness exam-ined before a state grand jury or other evidence received by it may be made without being directed by a court to:

(1) the Attorney General or his designee for use in the performance of their duties; and

(2) those governmental personnel, including personnel of the State or its political subdivisions, as are considered necessary by the Attorney General or his designee to assist in the performance of their duties to enforce the criminal laws of the State; provided that any person to whom matters are disclosed under this item (2) shall not utilize that state grand jury material for purposes other than

assisting the Attorney General or his designee in the performance of their duties to enforce the criminal laws of the State. The Attorney General or his designee promptly shall provide the presiding judge before whom was impaneled the state grand jury whose material has been disclosed, the names of the persons to whom the disclosure has been made, and shall certify that he has advised these persons of their obligation of secrecy under this section.

By its terms, subsection A applies only to the Attorney General or his designees, or to those whom disclosure is made pursuant to Subsection B. Subsection B is inapplicable here, as it likewise pertains to the Attorney General, and governmental personnel acting in the performance of their duties. We find no basis to hold Sowell in criminal contempt for willful violation of a statute which, on its face, does not apply to him. *Welchel v. Boyter* (party may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do).

■ The Court of Appeals affirmed the finding of contempt based in part upon the emphasized language of § 14–7–1720(B)(2), requiring the Attorney General or his designee to give notice to the circuit court if grand jury information was disclosed. The Court of Appeals cited the mandatory language of section 14–7–1720(B)(2), as follows:

The Attorney General or his designee promptly shall provide the presiding judge before whom was impaneled the state grand jury whose material has been disclosed, the names of the persons to whom the disclosure has been made, and shall certify that he has advised these persons of their obligation of secrecy under this section.

The Court of Appeals went on to note there was evidence to support the trial court's rulings inasmuch as Sowell failed to inform the court that he disclosed the grand jury material to Gore. However, Sowell's failure to advise the trial court of disclosure was not the basis of the trial court's finding of contempt. Accordingly, the Court of Appeals erred in utilizing this as a basis for affirming the contempt finding. *Connolly v. People's Life Ins. Co. of South Carolina*, 299 S.C. 348, 384 S.E.2d 738 (1989) (Court of Appeals may not decide an issue neither raised to nor ruled upon by the trial judge).

■ Further, the Court of Appeals affirmed the contempt finding based on the fact that Curtis testified he was kept apprised by Gore of materials which pertained to him. However, the State specifically maintained at the contempt hearing that it was not seeking a contempt violation for Gore's disclosure to a third party but, rather, due solely to Sowell's disclosure to Gore. The Court of Appeals erred in utilizing this ground to affirm the contempt finding. *Connolly v. People's Life.*

■ Further, subsection 14–7–1720(B)(2) authorizes the designee of the Attorney General to disclose as he deems necessary to assist personnel in the performance of their duties to enforce the criminal laws. This section, if applied to Sowell, would authorize Sowell's disclosure to necessary personnel (i.e. Gore) to aid him in his duties. Accordingly, Sowell may not be held in willful contempt for disseminating information for which 14–7–1720(B)(2) authorizes disclosure.

■ Lastly, the trial court held that "Gore stated in his testimony that he was not given any instruction regarding the release of this information to any other individuals [from Sowell]." As Sowell points out, however, this is not what Gore testified. Gore was asked by the prosecution, "When Mr. Sowell left this information with you, did he give you any instructions about what to do or anything about grand jury material, anything like that?" Gore responded, "No, ma'am." However, Gore later testified that "The best I can recall, you handed me that box and you said, 'These are statements that have been taken from the people in this case. I want you to look through them and go investigate the ones you feel are pertinent to the upcoming case." The query went on, "And what did I tell you about disclosing the information from that file?" [Answer] "No, you told me to keep the box under lock and key at all times."

Sowell subsequently testified that before he gave the information to Gore, he had instructed him not to disclose the contents to anyone. We find that, to the extent the trial court held Sowell had released the information to Gore without advising him not to further disseminate it, its findings are not supported by the evidence. *Pratt v. S.C. Dep't of Social Svcs.*

340 ▮▮▮▮▮▮▮▮▮▮▮

(contempt finding is subject to reversal where based on a finding that is without evidentiary support).

## CONCLUSION

Given that S.C.Code Ann. § 14–7–1720 is, by its terms, inapplicable to Sowell, we find that the protective order fails to sufficiently advise him of what he must do. Accordingly, the finding of contempt is reversed.

**REVERSED.**[2]

MOORE and PLEICONES, JJ., concur.

TOAL, C.J., dissenting in a separate opinion in which BURNETT, J., concurs.

Chief Justice TOAL dissenting:

I respectfully dissent. In my opinion, the majority mistakenly relies on S.C.Code Ann. § 14–7–1720(B)(2) (Supp.2004) in overturning Sowell's contempt citation. The majority correctly states that subsection (B)(2) outlines specific duties of governmental personnel involved in enforcing the criminal laws of the State. However, the majority ignores the fact that the trial court's protective order directs that the parties to this action are also subject to the restrictions of S.C.Code Ann.

---

2. The dissent concludes Sowell was properly held in contempt pursuant to S.C.Code Ann. §§ 14–7–1700 and 14–7–1720 **(A)**. Section 14–7–1700 requires disclosure of grand jury proceedings to the defendant "subject to the limitations of Section 14–7–1720(A) and (D)." The portion of § 14–7–1720(A) cited by the dissent applies to state grand jurors themselves stating, "state grand jury proceedings are secret, and a state grand juror shall not disclose the nature or substance of the deliberations or vote of the state grand jury." The only portion of § 14–7–1720(A) which could conceivably apply here states, "a state grand juror, the Attorney General or his designee, any interpreter used, the court reporter, and **any person to whom disclosure is made pursuant to subsection (B)(2) of this section may not disclose the testimony of a witness examined before a state grand jury or other evidence received by it except when directed by a court.**" Accordingly, this section requires a court order directing disclosure only if the disclosure was initially made pursuant to subsection (B)(2).

Moreover, the position advanced by the dissent would expose criminal defense attorneys who disclose grand jury materials to their office personnel for trial, investigative or discovery purposes to a finding of criminal contempt absent a court order authorizing such disclosure.

§ 14–7–1700. The Code provides that a criminal defendant is entitled to a copy of the transcript of the grand jury hearing "[s]ubject to the limitations of Section 14–7–1720(A) and (D) and Rule 5, South Carolina Rules of Criminal Procedure." S.C.Code Ann. § 14–7–1700 (Supp.2004).

Accordingly, the language of § 14–7–1700 places *the same secrecy restrictions* upon the criminal defendant and his counsel that *the state grand jurors* are subject to via § 14–7–1720(A).[3] This limitation dictates that "[s]tate grand jury proceedings are secret, and a state grand juror shall not disclose the nature or substance of the deliberations . . . of the state grand jury." S.C.Code Ann. § 14–7–1720(A). Therefore, any disclosure under section (A) must be done under the direction of the Court.[4]

The portion of the statute relied upon by the majority, § 14–7–1720(B)(2) governs those occasions when disclosure can be made without leave of the court. As correctly pointed out, this section is not even applicable to Sowell. Were it applicable, Sowell's disclosure to Gore would be permissible because he could have done it without the court's permission. However, because § 14–7–1720(A) requires the leave of the

---

3. Under the majority's rationale, the language contained in § 14–7–1700 stating that *"subject to the limitations* of [s]ection 14–7–1720(A) and (D) . . . a defendant has the right to review . . . . materials"* is meaningless. S.C.Code Ann. § 14–7–1700 (emphasis added).

4. The majority correctly points out that a criminal defense attorney must make clear to whom disclosure can be made by asking the court for permission to disclose under § 14–7–1720(A). This would include a defense attorney's employees or office personnel. The grand jury proceedings are by their very nature secretive and designed to prevent the very thing that happened in the present case—i.e. disclosure to an unauthorized person who then takes that information and divulges it to a person under investigation by the grand jury. This result is not dictated by my position but rather by the very language contained in the statute. The majority's position would insulate an authorized person from penalty under the statute by allowing the authorized person to simply inform their employee of the grand jury's investigation and then leave it to chance whether that employee informs whomever he or she would like. In my opinion, the integrity of the grand jury proceedings can be compromised by engaging a lawyer's office in a game of "whisper down the line." It is not overly burdensome to get the court's permission for a specific disclosure, and obtaining such disclosure permission protects the lawyer from unauthorized down the line disclosure.

court to disclose grand jury information, Sowell was appropriately held in contempt pursuant to § 14–7–1720(D) for his disclosure to Gore.[5]

Therefore, I would uphold the trial court's decision holding Sowell in contempt.

BURNETT, J., concurs.

---

5. To further exemplify the contemptuous nature of Sowell's actions, the record indicates that a person under investigation by the grand jury, Curtis, paid a legal fee to Sowell to keep another suspect from testifying against Curtis. While Curtis paying Sowell a fee might not be the reason for the trial court holding Sowell in contempt, this fact epitomizes Sowell's total disregard for the much needed secrecy in the grand jury proceedings.