641 S.E.2d 45

**Samuel BROWNLEE and Richard Jolly, Appellants,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Respondent.**

**No. 4200.**

Court of Appeals of South Carolina.

Heard Sept. 27, 2006.

Decided Jan. 29, 2007.

120 

Christopher M. Holmes, of Mt. Pleasant, for Appellants.

Leslie S. Riley, of Charleston, for Respondent.

KEMMERLIN, Acting Judge:

Samuel Brownlee and Richard Jolly (Landowners) appeal from an order of the circuit court affirming the Coastal Zone Management Appellate Panel's denial of permits to extend docks from their respective properties, across a tributary, to the Bohicket River. In the alternative, Landowners argue the circuit court should have ordered a neighboring dock be moved. We reverse.

## PROCEDURAL HISTORY

This case reaches us through a contorted appellate process. It arises from a decision of the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management (OCRM) denying the Landowners permission to build or to extend private recreational docks from their lots to the Bohicket River, sometimes called Bohicket Creek.

The Landowners sought review by the Administrative Law Division (ALJ) where the case was assigned to the Honorable Ralph King Anderson, III. Judge Anderson allowed Edward Mappus to intervene *pro se* and heard the case on November 5, 2002, taking testimony and other evidence. By Orders of March 7, 2003, and April 23, 2003, Judge Anderson overruled the OCRM's determination and directed that permits be issued to Landowners.

On Appeal, The Coastal Zone Management Appellate Panel (CZMAP) reversed the decision of the ALJ and the Landowners appealed to the Court of Common Pleas for Charleston County. There the case was heard by the Honorable Mikell Scarborough, Circuit Judge, who affirmed the CZMAP in an opinion dated October 25, 2004. This appeal by the Landowners followed.

## FACTS

The South Carolina Coastal Council in 1989 issued to David and Melissa Case a permit to build from their property to the Bohicket River a seven-hundred-foot walkway across an inter-tidal mud flat. The Cases thereafter sold their lot and assigned their permit to Lawrence Atkinson who in 1991 built a walkway and dock to the Bohicket River; however, the dock did not comply with the Coastal Council's permit. It is one hundred thirty feet longer than permitted, and it does not reach the Bohicket at the point allowed by the permit. Instead, the pierhead extends into the main run (the deepest part) of the swash referred to in the record below as a "tributary" of the Bohicket.[1]

Atkinson's dock builder applied for "as built" approval, but in September of 1991, the Coastal Council's Permit Coordinator noted that the dock was not where it should be and that it "was obstructing navigation of [the] tributary."[2] An enforcement action against Atkinson was brought, and in November of 1991, the South Carolina Coastal Council issued its Order providing:

[T]he 'as built' dock is not in compliance with the issued permit in that it is longer than permitted and is not constructed in the permitted location. The dock extends well channelward of the permitted extension. This extension is not reasonable for the intended use under R.30–12(c). The constructed dock also impedes navigation into the adjoining tributary. . . .

Atkinson failed to comply with the Order, and the dock still stands in defiance of the Order of the Coastal Council, the predecessor of OCRM. Moreover, OCRM has not enforced the removal Order.

Samuel Brownlee and Richard Jolly, the Landowners, are the contiguous owners of property abutting on the tributary. In 2001 they sought permits to build a dock seven hundred

---

1. This body of water actually contributed nothing: it only returned at low tide the water it had received from the Bohicket at high tide. But because the word "tributary" was used in the record, we will call it that.

2. The walkway was one hundred thirty feet longer than permitted and the pierhead blocked the tributary as hereafter described.

fifty feet across the marsh to the Bohicket. To do this, they had to pass over the tributary. OCRM, as the successor to the Coastal Council in permitting activities,[3] denied the issuance of permits on April 19, 2002, the denial being stated by the Agency in a letter that read in pertinent part:

OCRM staff has determined that authorizing the dock extension over the tributary would be counter to Regulations. OCRM Regulations specifically state "docks shall not impede navigation and they can only extend to the first navigable creek as evidenced by a significant change in grade." OCRM staff performed a boat trip and found that the creek exhibits significant width (50') and change in grade at your dock that excludes the very nature of a waterbody that is navigable. Furthermore, the creek has an established history of public use as evidenced by the four (4) docks that currently access this creek.

When the case reached Judge Anderson, he tried it and issued his all important decision—all important because in the long history of the case his was the only tribunal where the witnesses actually appeared and gave testimony and offered other evidence. At trial Richard Chinnis, an employee of OCRM, testified that in 1991 he was the Permit coordinator and in that connection was aware of the Atkinson permit and the enforcement action against Atkinson. When shown a plat which depicted the Atkinson dock, the following colloquy appears in the trial transcript:

Q: And can you identify it on there the tributary that the ... [Landowners lots] ... are upon?

A: Well, he's [the maker of the plat] showing what's labeled a nonvegetative intertidal mud flat to the—if you're on the high ground looking at the Bohicket to the immediate right of the walkway. This is not exactly the configuration of the creek that Mr. Combos has his dock permit on, but I guess that's the creek he's talking about even thought it's labeled ... [as an] ... intertidal mud flat, not a creek.... [1]

---

3. Under Act 123 of the 1977 General Assembly.

4. The insignificance of the tributary is implied by this testimony. It was not sufficiently different from the mud flat crossed as to cause the maker of the plat to chart it.

After he visited the site, he wrote Atkinson in 1991, advising him that the dock as built was a hazard to navigation.

Chuck Dawley, a registered land surveyor qualified as an expert in surveying tidal areas, testified that the Atkinson walkway and pierhead crossed the main run of the tributary at its mouth and that on the day of his survey, a windy day, the boat he occupied was "actually being propelled into the Atkinson dock." He stated that a boat once within the tributary could be used when the tide was up, but that there was difficulty in getting in and out of the tributary.

Steven Combos, the owner of a lot which abuts the tributary and the holder of a U.S. Coast Guard certificate to operate fifty gross ton size vessels, was qualified as an expert on safety and navigation and testified that the Atkinson dock obstructs navigation and also presents a hazard to navigation in this area. He testified:

> Well, when you try to traverse, coming or going, from the inlet and you have a north wind or you have an outgoing tide, you have to hug the pilings that are on that dog leg well before you get to his fixed pier because if you don't you'll be on the sandbar to the opposite site, and I've hit the pilings and I've hit that oyster mound plenty of times. Now, in ideal conditions, you know, when you have basically a high tide or no wind, I mean, you know, it is possible to get by it. But, like I say, it's my experience that it's far and few between that those opportune times are there.

He stated that it is particularly hazardous because after the Atkinson dock was built, an oyster bank and a sandbar at the mouth of the tributary have grown "tremendously." When Mr. Combos approached OCRM staff, he was told that he and the Landowners would be permitted to build their docks over the tributary to Bohicket Creek, but Edward Mappus, the *pro se* intervener in this case and owner of a lot on the tributary objected. Mr. Combos, who owns the lot next to Mr. Mappus, offered to elevate any portion of his dock and walkway over the tributary and to let Mr. Mappus use his dock, but Mappus would not consent to allowing the proposed walkway and dock to reach the Bohicket River. Judge Anderson found that the Atkinson dock "presents a significant impediment to navigation in the tributary," and he ruled that OCRM must either

direct removal of the Atkinson dock or issue the requested permits to the Landowners.

On appeal, OCRM called Mr. Curtis Joyner, its Manager of Critical Area Permitting. He testified that he also visited the site by boat. He made various measurements at a three-quarter tide. He asserted that at that stage of the tide he had no trouble entering the tributary. His visit to the tributary, unlike that of Mr. Dawley, the Registered Land Surveyor, did not occur on a windy day. The substance of his testimony was that he did not feel that the building of the Atkinson dock in the main run of the tributary and the build up of a bar and oyster bank since the dock was placed had made the tributary not-navigable. OCRM reversed the ALJ, finding he erred in his interpretation of 23A S.C.Code Ann. Regs. 30–12(A)(2)(n). This appeal followed.

## STANDARD OF REVIEW

█ Under the Administrative Procedures Act (APA),[5] an Administrative Law Judge presides as the fact finder. *See* S.C.Code Ann. § 1–23–600(B) (Supp.2005); *Brown v. South Carolina Dept. of Health & Envtl. Control,* 348 S.C. 507, 520, 560 S.E.2d 410, 417 (2002). A proceeding before the ALJ is in the nature of a de novo hearing, including the presentation of evidence and testimony, rather than an appellate proceeding. *See Brown,* 348 S.C. at 512, 560 S.E.2d at 413.

The Appellate Panel reviews the decision of the Administrative Judge in an appellate capacity pursuant to section 1–23–610(D) of the South Carolina Code. S.C.Code Ann § 1–23–610(D) (2005).[6] The Appellate Panel's review is confined to the record before it. The circuit court's review is the same as this Court's under section 1–23–380(A)(6)(2006) of the South Carolina Code. *See* S.C.Code Ann. § 1–23–380(A)(6)(2005); [7]

---

**5.** S.C.Code Ann. §§ 1–23–10 to –660 (2005 & supp.2005).

**6.** This section was amended by 2006 South Carolina Laws Act 387 (H.B.3285); however, the applicable language at all times pertinent to the present appeal is found in section 1–23- 610(D) (2005).

**7.** This section was also amended by 2006 South Carolina Laws Act 387 (H.B.3285); however, similar to the above, the applicable language all

*Brown,* 348 S.C. at 512, 560 S.E.2d at 413. It may reverse a decision of an administrative agency if the agency's findings or conclusions are:

> (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C.Code Ann. § 1–23–380(A)(6)(2005); *see also Weaver v. South Carolina Coastal Council,* 309 S.C. 368, 374, 423 S.E.2d 340, 343 (1992).

## LAW/ANALYSIS

In reviewing the final decision of the ALJ pursuant to section 1–23–610(D), the Appellate Panel sits as a quasi-judicial tribunal and is not entitled to make findings of fact. *See Brown,* 348 S.C. at 520, 560 S.E.2d at 417. "The [Appellate] Panel can validly reverse the ALJ based on an error of law ... or if his findings are not supported by substantial evidence." *Dorman v. South Carolina Dept. of Health & Envt. Control,* 350 S.C. 159, 165, 565 S.E.2d 119, 122 (Ct.App. 2002).

Here there is no error of law by the ALJ and his findings are supported by the required substantial evidence. The Appellate Panel found the ALJ misinterpreted what constitutes a navigable waterway under Regulation 30–12(A)(2)(n) and reversed the ALJ's ruling. Specifically, the Appellate Panel determined the ALJ erred in concluding "in order for a waterway to be legally navigable under Regulation 30–12(A)2(2)(n), the navigation of the waterway must not be so impeded as to create a frequent hazard" and in concluding that the tributary "currently is not a navigable waterway." We find this was error.

OCRM took the position that *as a matter of law* the creek was navigable. If that was true, the Landowners could

---

times pertinent to the present appeal is found in section 1–23–380(A)(6)(2005).

not prevail. But navigability here is a matter of fact, and the facts as found by the ALJ were adverse to OCRM. OCRM claimed the creek was navigable; the Landowners claimed it was not. Although the testimony is in dispute, the facts as found by the ALJ are supported by the evidence. In the words of the ALJ:

In this case, the area of the tributary in front of the Petitioners' property is currently a defined channel, as evidence by a significant change in grade with the surrounding marsh. However, the mere existence of a defined channel is not enough to satisfy the provisions of Regulation 30–12A(2)(n). Rather, the regulation requires that the waterway also be navigable. Though the tributary itself may be capable of floating watercraft at mid-tide, the facts establish that the mouth of the tributary cannot be consistently navigated safely at the ordinary stages of the tides because of the Atkinson dock. Therefore, I find that it currently is not a navigable waterway.

Further, the ALJ held:

While the tributary itself can be navigated at mid-tide and higher, the "thread" of the stream goes underneath the Atkinson dock and is an impediment to boaters attempting to enter or exit the tributary. Though it is possible to easily navigate around the dock, as reflected by the experience of the OCRM staff, that ease of navigation is dependant upon unpredictable winds and currents. Therefore, I find that the Atkinson dock as it is currently situated presents a frequent hazard to safe navigation in and out of the tributary at the ordinary tides due to the location of the channel of the tributary under the Atkinson dock, the existence of the sand bar/mud flat on the side of the mouth opposite the Atkinson dock, and the prevailing winds and currents.

The ALJ concluded the decision as follows:

I conclude that in order for a waterway to be legally navigable under Regulation 30–12A(2)(n), the navigation of the waterway must not be so impeded as to create a frequent hazard. Therefore, though the docks would cross a defined channel, they would not cross a navigable waterway and thus would not impede reasonable navigation in the

tributary to the detriment of the public and an adjacent property owner ... [T]he determination that the tributary is not navigable is due to a man-made impediment. If the Atkinson dock is removed from its location in the mouth of the tributary, the impediment would no longer exist and the tributary would be a navigable stream.

This factual finding is consistent with a prior determination of OCRM's predecessor. The Coastal Council, in its Order of November 1991, found that the Atkinson dock as built "impedes navigation." The dock remains to this day in the same place, still impeding navigation.

CZMAP failed to state how the ALJ erred in his interpretation of 23A S.C.Code Ann. Regs. 30–12(A)(2)(n). Rather, the order simply states that the ALJ erred where he concluded: "in order for a waterway to be legally navigable under Regulation 20–12(A)(2)(n), the navigation of the waterway must not be so impeded as to create a frequent hazard," and "the facts establish that the mouth of the tributary cannot be consistently navigated safely at the ordinary stages of the tides because of the Atkinson dock. . . ." Absent explanation of this legal conclusion, or of how the facts in the record supported a finding of "navigability" under the regulation, we can see no error of law meriting reversal of the ALJ. Further, the ALJ's findings of fact were supported by substantial evidence on the record.

Here OCRM finds itself in the position of trying to pull its chestnuts from a fire it set. It would not face the problem it now faces if it and its predecessor, the Coastal Council, had proceeded to enforce the removal Order directed to Atkinson.

## CONCLUSION

Based on the foregoing, we reverse the circuit court's order which affirmed OCRM's denial of the landowner's dock permit. We reinstate the ALJ's order, which remanded the case so OCRM could either remove the Atkinson dock or approve the Landowners' dock permits.

**REVERSED.**

HEARN, C.J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, J.: I respectfully dissent.

Samuel Brownlee and Richard Jolly (collectively, "Landowners") brought this action against the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management ("OCRM"), after it denied their requests for construction permits to extend two private docks to a nearby river. Upon review, an Administrative Law Judge ("ALJ") ordered OCRM to issue the permits. On appeal, the Coastal Zone Management Appellate Panel (the "Appellate Panel") reversed the ALJ and reinstated the denial of the permits. The circuit court affirmed. Landowners appeal. I would affirm.

## FACTS

Landowners have residential property on Johns Island that is adjacent to an unnamed tributary of the Bohicket River in Charleston County, South Carolina. Landowners' ground is separated from the Bohicket River by the tributary and an expanse of marsh. Brownlee has a partially constructed dock that was originally permitted to the tributary, but which has not been completed. Jolly has a complete dock that extends to the tributary. This case arises out of Landowners' desire to cross the tributary in order to reach the Bohicket River.

Landowners submitted permit applications to OCRM in 2001 requesting permission to extend their existing docks across the adjacent tributary and into the Bohicket River. Landowners' applications were submitted along with applications filed by two other similarly situated neighbors.

The basis for the permits was Landowners' belief that the location of a neighbor's dock, owned by Lawrence Atkinson and constructed in 1991, was situated near the mouth of the tributary in such a way that the creek was no longer safely navigable.[8] An upstream neighbor of the Landowners, Ed-

---

8. By letter dated September 4, 1991, the South Carolina Coastal Council, the predecessor to OCRM, denied an "as-built" permit sought by Atkinson. The Coastal Council explained, "[T]he location of the dock is

ward Mappus, objected to Landowners' applications on the ground extension of the docks would create a barrier to his use of the tributary. Mappus stated he navigates in and out of the tributary for recreational purposes about thirty times per year.

OCRM determined authorization to extend the docks over the tributary would be counter to existing regulations and denied the applications. In letters sent in April 2002 informing Landowners of its decision, OCRM explained:

> OCRM Regulations specifically state, "docks shall not impede navigation and they can only extend to the first navigable creek as evidenced by a significant change in grade." OCRM staff performed a boat trip and found that the creek exhibits significant width (50') and change in grade at your dock that exudes the very nature of a waterbody that is navigable. Furthermore, the creek has an established history of public use as evidenced by the 4 docks that currently access this creek.

OCRM cited several regulations, including former 23A S.C.Code Ann. Regs. 30–12(A)(2)(n) (Supp.2001),[9] to support the denial of Landowners' applications.

---

substantially different from that shown on the original permit" and "this location presents a hazard to navigation both in its proximity to the mouth of the tributary and in its channelward extension." Atkinson was advised in the letter that an enforcement action would be commenced to bring the dock into compliance. On November 22, 1991, the Coastal Council issued an Administrative Order finding the Atkinson dock was not in compliance with the permit and instructing Atkinson to relocate the dock within thirty days. The record does not reflect that any enforcement action was ever taken and the location of the dock has not changed.

9. OCRM cited former Regulation 30–12(A)(2)(n) as follows:

> Docks must extend to the first navigable creek with a defined channel as evidenced by a significant change in grade with the surrounding marsh. Such creeks cannot be bridged in order to obtain access to deeper water. However, pierheads must rest over open water and floating docks which rest upon the bottom at normal low tide will not normally be permitted.

The version of the regulation cited by OCRM was in effect at the time the permit applications were considered. The regulation was subsequently amended, however, and is found in its current form at Regulation 30–12(A)(1)(n). *See* 23A S.C.Code Ann. Regs. 30–12(A)(1)(n) (Supp.2005).

Landowners sought review of OCRM's decision by the South Carolina Administrative Law Judge Division (now the South Carolina Administrative Law Court).[10] A contested case hearing was held in November 2002. In his order dated March 7, 2003, the ALJ "conclude[d] that in order for a waterway to be legally navigable under Regulation 30–12A(2)(n), the navigation of the waterway must not be so impeded as to create a frequent hazard." The ALJ determined the tributary is not a navigable waterway under Regulation 30–12(A)(2)(n) "due to a man-made impediment"—i.e., the Atkinson dock. The ALJ noted, however, that "[i]f the Atkinson dock is removed from its location in the mouth of the tributary, the impediment would no longer exist and the tributary would be navigable." The ALJ reversed the decision of OCRM and remanded the case to OCRM to "either have the Atkinson dock removed from its current location and constructed as it was originally permitted or approve [Landowners'] permits to the Bohicket River."

The ALJ subsequently amended his order on April 23, 2003, after OCRM filed a motion to alter or amend, clarifying that, "[t]hough the waters of the tributary in front of the [Landowners'] property are navigable, the waterway itself is not navigable because the mouth of the tributary cannot safely be entered at the ordinary stages of the tide." The judge directed OCRM to grant Landowners' application for permits to extend their docks to the Bohicket River.

OCRM appealed the ALJ's ruling to the Appellate Panel, which reversed the ALJ, finding the judge erred in his conclusions of law. Specifically, the Appellate Panel found the ALJ "erred in his interpretation of 23A S.C.Code Ann. Regs. 30–12(A)(2)(n)" in determining what constituted a navigable waterway.

Landowners thereafter appealed to the circuit court, which affirmed the Appellate Panel. The circuit court concluded the Appellate Panel was "within the scope of [its] authority [in] setting forth [its] own interpretation of the regulations" and

10. The name was changed by Act No. 202, effective April 26, 2004. *See Civil Action No.: # 2001–CP–32–0711 Carolina Water Serv., Inc. v. Lexington County Joint Mun. Water & Sewer Comm'n*, 367 S.C. 141, 625 S.E.2d 227 (Ct.App.2006), *overruled on other grounds by Edwards v. SunCom*, 369 S.C. 91, 631 S.E.2d 529 (2006).

noted it "agree[s]" with [the Appellate Panel's] interpretation that Reg. 30–12 prohibits the crossing of navigable waterways unless there is an obstruction, which prohibits navigation at most stages of the tide cycle." This appeal followed.

## STANDARD OF REVIEW

This case has had a contested case hearing as well as several levels of appellate review. Under the Administrative Procedures Act (APA),[11] the ALJ presided as the fact finder. *See* S.C.Code Ann. § 1–23–600(B) (Supp.2005); *Brown v. South Carolina Dep't of Health & Envtl. Control*, 348 S.C. 507, 520, 560 S.E.2d 410, 417 (2002). The proceeding before the ALJ was in the nature of a de novo hearing, including the presentation of evidence and testimony, rather than an appellate proceeding. *See Brown*, 348 S.C. at 512, 560 S.E.2d at 413.

The Appellate Panel reviewed the decision of the ALJ in an appellate capacity pursuant to section 1–23–610(D) of the South Carolina Code. S.C.Code Ann. § 1–23–610(D) (2005).[12] The Appellate Panel's review was confined to the record before it. *Id.*

The circuit court's review is the same as this Court's under section 1–23–380(A)(6) of the South Carolina Code. *See* S.C.Code Ann. § 1–23–380(A)(6) (2005)[13]; *Brown*, 348 S.C. at 512, 560 S.E.2d at 413. This Court may reverse a decision of an administrative agency if the agency's findings or conclusions are "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (f) arbitrary

---

11. S.C.Code Ann. §§ 1–23–10 to –660 (2005 & Supp.2005).

12. This section was amended by 2006 South Carolina Laws Act 387 (H.B.3285); however, the applicable language at all times pertinent to the present appeal is found in section 1–23–610(D) (2005).

13. This section was also amended by 2006 South Carolina Laws Act 387 (H.B.3285); however, similar to the above, the applicable language at all times pertinent to the present appeal is found in section 1–23–380(A)(6) (2005).

or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." S.C.Code Ann. § 1–23–380(A)(6) (2005); *see also Weaver v. South Carolina Coastal Council*, 309 S.C. 368, 374, 423 S.E.2d 340, 343 (1992).

## LAW/ANALYSIS

### I. Independent Fact Finding

Landowners contend the circuit court erred by failing to reverse the Appellate Panel for improperly engaging in independent fact finding and for characterizing the alleged fact finding as the correction of "legal error."

In reviewing the final decision of the ALJ pursuant to section 1–23–610(D), the Appellate Panel sits as a quasi-judicial tribunal and is not entitled to make findings of fact. *See Brown*, 348 S.C. at 520, 560 S.E.2d at 417. Under this standard, "[t]he [Appellate] Panel can validly reverse the ALJ based on an error of law . . . or if his findings are not supported by substantial evidence." *Dorman v. South Carolina Dep't of Health & Envtl. Control*, 350 S.C. 159, 165, 565 S.E.2d 119, 122 (Ct.App.2002).

The evidence presented at the contested case hearing before the ALJ indicates navigation between the tributary and the Bohicket River was possible, but made more difficult by the Atkinson dock and other dangerous conditions. Based on this evidence, the ALJ initially found the tributary was not navigable, although the tributary would be navigable if the Atkinson dock were removed. In his final order upon OCRM's motion to alter or amend, the ALJ found: "Though the waters of the tributary in front of the [Landowners'] property are navigable, the waterway itself is not navigable because the mouth of the tributary cannot safely be entered at the ordinary stages of the tide." The ALJ ordered OCRM to issue the permits.

The Appellate Panel found the ALJ misinterpreted what constitutes a navigable waterway under Regulation 30–12(A)(2)(n) and reversed the ALJ's ruling. Specifically, the Appellate Panel determined the ALJ erred in concluding "in order for a waterway to be legally navigable under Regulation 30–12(A)(2)(n), the navigation of the waterway must not be so impeded as to create a frequent hazard" and in concluding the

tributary "currently is not a navigable waterway" based on the fact "that the mouth of the tributary cannot be consistently navigated safely at the ordinary stages of the tides because of the Atkinson dock."

I agree with the Appellate Panel's determination that the ALJ erred in his interpretation of what constitutes a navigable waterway under the aforementioned regulation. The mere fact that an artificial structure, such as Atkinson's dock, impedes navigation does not make the waterway nonnavigable. I find no compelling reason to reverse the agency's interpretation of its own regulation. Accordingly, the circuit court did not err in upholding the Appellate Panel's decision. *See South Carolina Coastal Conservation League v. South Carolina Dep't of Health & Envtl. Control*, 363 S.C. 67, 75, 610 S.E.2d 482, 486 (2005) ("Courts defer to the relevant administrative agency's decisions with respect to its own regulations unless there is a compelling reason to differ."); *Dorman*, 350 S.C. at 163–65, 565 S.E.2d at 121–22 (holding the portion of the Appellate Panel's order "on OCRM policy underlying navigation and construing its regulation was proper"; the Appellate Panel had found the ALJ misinterpreted "navigation" in the agency regulations to include disputes between neighbors or conflict with nearby docks, whereas OCRM had interpreted its own regulations and determined that any navigational issues between docks is a private property owner issue); 65 C.J.S. *Navigable Waters* § 8 (2000) ("As a general rule a stream or other body of water is not rendered nonnavigable because of occasional difficulties attending navigation. . . . So, a stream may be navigable despite the obstruction of falls, rapids, sand bars, carries, or shifting currents. Artificial obstructions which are capable of being abated by the due exercise of public authority do not prevent a stream from being regarded as navigable . . . ." (footnotes omitted)).

## II. Equal Protection

Landowners additionally assert the circuit court erred in failing to find OCRM's failure to grant their application for dock permits denied them equal protection under the law. *See* U.S. Const. Amend. 14, § 1; S.C. Const. Art. 1, § 3. Landowners maintain other similarly situated persons in the vicinity and elsewhere have been granted the relief they seek.

"In reviewing the final decision of an administrative agency, the circuit court sits as an appellate court." *Brown*, 348 S.C. at 519, 560 S.E.2d at 417. "Consequently, issues not raised to and ruled on by the agency are not preserved for judicial consideration." *Id.* "Likewise, issues not raised to and ruled on by the ALJ are not preserved for appellate consideration." *Id.* "While it is true that ALJs cannot rule on a facial challenge to the constitutionality of a regulation or statute, ALJs can rule on whether a law as applied violates constitutional rights." *Dorman*, 350 S.C. at 171, 565 S.E.2d at 126.

In this case, the ALJ did not make a specific finding in his original order as to whether OCRM's denial of the dock permits constituted a violation of Landowners' equal protection rights. Moreover, this issue was neither raised in a post-trial motion nor considered in the ALJ's post-trial order. In addition, this issue was neither raised to nor ruled upon by the Appellate Panel. In fact, the record indicates that the issue concerning the violation of Landowners' equal protection rights was expressly raised for the first time to the circuit court. The issue, therefore, of whether Landowners' equal protection rights were violated is not preserved for appellate review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *DuRant v. South Carolina Dep't of Health & Envtl. Control*, 361 S.C. 416, 424–25, 604 S.E.2d 704, 709 (Ct.App. 2004) (determining an equal protection claim not raised to and ruled upon by the ALJ was not preserved for appellate review); *see also State v. Sowell*, 370 S.C. 330, 635 S.E.2d 81 (2006) (holding the appellate court erred in deciding an issue not raised to and ruled upon by the trial judge); *Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (stating an issue not expressly ruled upon by the circuit court was not properly before the appellate court).

I would affirm.